**Mary E. HAMMOND, Individually and Mary E. Hammond as She Is the Executrix of the Estate of Charles E. Hammond, Plaintiff, Appellant,**

v.

**UNITED STATES of America, Defendant, Appellee.**

**No. 85–1339.**

United States Court of Appeals, First Circuit.

Argued Oct. 11, 1985.

Decided March 12, 1986.

Marc S. Alpert, P.C., Boston, Mass., for plaintiff, appellant.

Leon B. Taranto, Atty., Torts Branch, Civ. Div., U.S. Dept. of Justice, with whom Jeffrey Axelrad, Director, Torts Branch, Paul F. Figley, Asst. Director, Torts Branch, Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., and William F. Weld, U.S. Atty., Boston, Mass., were on brief for defendant, appellee.

Before BOWNES and TORRUELLA, Circuit Judges, and HILL,* Senior District Judge.

BOWNES, Circuit Judge.

This is a constitutional challenge to the retroactive application of a federal statute, 42 U.S.C. § 2212, that substitutes the United States as defendant in all suits against private contractors to the government for radiation injuries arising from any of the United States atomic weapons testing programs, and makes the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80, the sole remedy for those injuries.

## I. BACKGROUND

Plaintiff Mary Hammond, individually and as executrix of the estate of her deceased husband Charles Hammond, formerly a civilian employee of the Department of Defense and observer at several atomic weapons tests, originally filed suit in 1978 in Massachusetts Superior Court for Middlesex County against defendants to be named later. Plaintiff filed an amended complaint on June 2, 1984, naming E G & G Company as defendant. The amended complaint alleged wrongful death, pain and suffering of the decedent, and loss of consortium, all due to cancer caused by the

* Of the Central District of California, sitting by designation.

negligent conduct of E G & G in failing to design the tests adequately to protect the deceased from radiation exposure. The complaint did not set out specific facts but generally alleged failure to warn, failure to provide proper protective clothing or equipment, general negligence, willful, wanton or reckless conduct, breach of warranty and fraud or deceit. There were three counts, the first and third in negligence, and the second under the Massachusetts wrongful death statute, Mass.Gen.Laws Ann. ch. 229. E G & G removed the case to federal court.

During the pendency of the action § 2212 was enacted. It provides, *inter alia:*

§ 2212. **Contractor liability for injury or loss of property arising out of atomic weapons testing programs**

(a) **Federal remedies applicable; exclusiveness of remedies; Federal employee status; procedure, limitations, and exceptions applicable**

(1) The remedy against the United States provided by sections 1346(b) and 2672 of Title 28, or by the Act of March 9, 1920 (46 U.S.C. 741–752 and 781–790), as appropriate, for injury, loss of property, personal injury, or death shall apply to any civil action for injury, loss of property, personal injury, or death due to exposure to radiation based on acts or omissions by a contractor in carrying out an atomic weapons testing program under a contract with the United States.

(2) The remedies referred to in paragraph (1) shall be exclusive of any other civil action or proceeding for the purpose of determining civil liability arising from any act or omission of the contractor without regard to when the act or omission occurred. The employees of a contractor referred to in paragraph (1) shall be considered to be employees of the Federal Government, as provided in section 2671 of Title 28, for the purposes of any such civil action or proceeding; and the civil action or proceeding shall proceed in the same manner as any action against the United States filed pursuant to section 1346(b) of such Title and shall be subject to the limitations and exceptions applicable to those actions.

Pursuant to § 2212(b)[1] E G & G was first certified by the Attorney General as an atomic weapons testing contractor on January 10, 1985, and then on January 23 the motion of the United States to substitute itself as defendant was granted. Defendant's motion to dismiss for failure to file an administrative claim under the FTCA was granted without prejudice on March 11. The district court considered plaintiff's challenge to the constitutionality of § 2212 and rejected it. It denied plaintiff's motion to vacate its order of dismissal. Plaintiff then took this appeal.

Plaintiff contends that § 2212 is unconstitutional on several alternative grounds: under the fifth amendment because the act destroyed vested rights in her pending state-law cause of action without due process of law, because it is an uncompensated "taking" of property, because it is the application of "unexpected" law without procedural due process of law, or because it violates equal protection; under the seventh amendment because the act denies plaintiff her right to a jury trial; under the ninth amendment because the act violates unenumerated rights reserved to the peo-

1. Section 2212(b) provides:

(b) **Delivery of process to Attorney General; removal of cases from State courts; certification of contractor status**

A contractor against whom a civil action or proceeding described in subsection (a) of this section is brought shall promptly deliver all processes served upon that contractor to the Attorney General of the United States. Upon certification by the Attorney General that the suit against the contractor is within the provisions of subsection (a) of this section, a civil action or proceeding commenced in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place wherein it is pending and the proceedings shall be deemed a tort action brought against the United States under the provisions of section 1346(b), 2401(b), or 2402, or sections 2671 through 2680 of Title 28. For purposes of removal, the certification by the Attorney General under this subsection establishes contractor status conclusively.

ple; under the tenth amendment because the act is beyond the power of Congress and infringes on powers reserved to the states; under the general constitutional right of access to the courts; under the article 1 prohibitions against *ex post facto* laws, bills of attainder and laws impairing contracts. We find that § 2212 does not violate the Constitution, and affirm.

## II. FIFTH AMENDMENT DUE PROCESS CHALLENGE

Plaintiff contends that § 2212 deprives her of a vested cause of action against E G & G without due process of law. She asserts that the filing of a suit on an accrued common-law or state statutory cause of action gives her a vested property right in that action, and that Congress cannot retroactively abolish that cause of action and legislate the dismissal of plaintiff's suit without violating due process. Plaintiff relies principally on *Coombes v. Getz,* 285 U.S. 434, 52 S.Ct. 435, 76 L.Ed. 866 (1932), and *Ettor v. Tacoma,* 228 U.S. 148, 33 S.Ct. 428, 57 L.Ed. 773 (1913). Plaintiff also contends that since Congress has denied plaintiff her right of access to the courts § 2212 must be subject to strict scrutiny review or an intermediate level of review to determine if Congress has justified its action. Finally, plaintiff claims that even under the least exacting standard of rational basis review the act cannot pass constitutional muster.

### A. Abolition of Vested Rights

The Supreme Court has found in certain cases that vested rights created by statute cannot be abridged by a subsequent statute that effectively takes away accrued causes of action to enforce those rights. The principal cases striking down retroactive abridgment involved statutes that created rights "vesting" in: a corporate charter, *Coombes v. Getz,* 285 U.S. at 439–48, 52 S.Ct. at 435–38; real property, *Ettor v. Tacoma,* 228 U.S. at 155–58, 33 S.Ct. at 430–31; and a quasi-contract, *Steamship Co. v. Joliffe,* 69 U.S. (2 Wall.) 450, 456–58, 17 L.Ed. 805 (1864). *Cf. Richmond Screw*

*Anchor Co. v. United States,* 275 U.S. 331, 48 S.Ct. 194, 72 L.Ed. 303 (1928) (rights in a patent); *Forbes Pioneer Boat Line v. Board of Comm'rs,* 258 U.S. 338, 339–40, 42 S.Ct. 325, 325–26, 66 L.Ed. 647 (1922) (rights to a fixed sum of money); *Ochoa v. Hernandez,* 230 U.S. 139, 161–64, 33 S.Ct. 1033, 1041–42, 57 L.Ed. 1427 (1913) (rights in real property). In these cases, because the rights had "vested" in real property, a contract, or in a fixed sum, they were said to stand independent of the statute that created them and could not be abridged by the subsequent statute. *Coombes,* 285 U.S. at 442, 52 S.Ct. at 436; *Ettor,* 228 U.S. at 156, 33 S.Ct. at 430; *Joliffe,* 69 U.S. at 458. In none of these cases was any right to a tort cause of action, or a right deriving from a tort, held to be "vested." The Supreme Court in *Ettor,* 228 U.S. at 157–58, 33 S.Ct. at 431, heavily relied on by the plaintiffs, expressly distinguished the action for an injury to property involved in that case from one in tort. *Cf. Louisiana v. Mayor of New Orleans,* 109 U.S. 285, 3 S.Ct. 211, 27 L.Ed. 936 (1883) (a state that limits a city's tax collecting power to such an extent that the city cannot pay a tort judgment against it does not violate the judgment holder's fourteenth amendment rights).

The present case involves common-law and state statutory tort rights that are nothing like the vested rights of the *Coombes, Ettor,* and *Joliffe* cases relied on by the plaintiff. Moreover, these are old cases and their rationales are not easy to reconcile or apply. In fact, their vitality may now be in doubt because more recent cases have upheld retroactive application of statutes that abridge economic and real property rights created under a prior statute without always carefully distinguishing the older cases. *See, e.g., Welch v. Henry,* 305 U.S. 134, 144, 146–51, 59 S.Ct. 121, 125–27, 83 L.Ed. 87 (1938); *Graham & Foster v. Goodcell,* 282 U.S. 409, 426–32, 51 S.Ct. 186, 192–95, 75 L.Ed. 415 (1931); *United States v. Heinszen & Co.,* 206 U.S. 370, 386–91, 27 S.Ct. 742, 746–58, 51 L.Ed. 1098 (1907); *Moss v. Hawaiian Dredging Co.,* 187 F.2d 442, 444–47 (9th Cir.1951);

*Battaglia v. General Motors Corp.*, 169 F.2d 254, 257–62 (2d Cir.), *cert. denied*, 335 U.S. 887, 69 S.Ct. 236, 93 L.Ed. 425 (1948); *Woods v. Schmid*, 164 F.2d 981, 982–83 (5th Cir.1947); *United States v. Atlantic Richfield Co.*, 435 F.Supp. 1009, 1029–31 (D.Alaska 1977), *aff'd*, 612 F.2d 1132 (9th Cir.1980); *Asselta v. 149 Madison Avenue Corp.*, 79 F.Supp. 413, 415–16 (S.D.N.Y. 1948); *Hospital Data Center of S.C., Inc. v. United States*, 634 F.2d 541, 544–45, 225 Ct.Cl. 158 (1980); *but cf. United States Trust Co. of New York v. New Jersey*, 431 U.S. 1, 17–28, 97 S.Ct. 1505, 1515–20, 52 L.Ed.2d 92 (1977) (applying an intermediate standard of review to strike down under the contracts clause a repeal of a statutory covenant that provided security for bondholders).

■ The question whether the rights asserted in plaintiff's state-law causes of action are "vested" cannot be answered by looking to see whether suit had already been filed and how far it had proceeded when Congress enacted § 2212. "No person has a vested interest in any rule of law entitling him to insist that it shall remain unchanged for his benefit." *New York Central R.R. Co. v. White*, 243 U.S. 188, 198, 37 S.Ct. 247, 250, 61 L.Ed. 667 (1917); *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 88 n. 32, 98 S.Ct. 2620, 2638 n. 32, 57 L.Ed.2d 595 (1978); *Second Employers' Liability Cases*, 223 U.S. 1, 50, 32 S.Ct. 169, 175, 56 L.Ed. 327 (1912); *Ducharme v. Merrill-National Laboratories*, 574 F.2d 1307, 1309 (5th Cir.), *cert. denied*, 439 U.S. 1002, 99 S.Ct. 612, 58 L.Ed.2d 677 (1978). This is true after suit has been filed and continues to be true until a final, unreviewable judgment is obtained. Chief Justice Marshall

first announced the principle in *The Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801). The Supreme Court held in that case that a court must apply the law in force at the time of its decision, even if it is hearing the case on appeal from a judgment entered pursuant to a prior law. For a more recent and stringent application of this rule, see *149 Madison Avenue Corp. v. Asselta*, 331 U.S. 795, 67 S.Ct. 1726, 91 L.Ed. 1822 (1947), *modifying* 331 U.S. 199, 67 S.Ct. 1178, 91 L.Ed. 1432 (1947).[2]

Because rights in tort do not vest until there is a final, unreviewable judgment, Congress abridged no vested rights of the plaintiff by enacting § 2212 and retroactively abolishing her cause of action in tort.

**B. Applicable Standard of Review**

■ Plaintiff is correct that Congress must comply with due process when abolishing or substantially modifying a common law cause of action. In that sense the right to sue is a "species of property." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982); *see Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. at 82–94, 98 S.Ct. at 2635–41. But, an act of Congress comes to us clothed with a presumption of constitutionality, and the burden is on the plaintiff to show that it violates due process. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976); *McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961).

■ This is not the first time Congress has substituted the government as defend-

---

2. In *149 Madison Avenue Corp. v. Asselta*, 331 U.S. 795, 67 S.Ct. 1726, 91 L.Ed. 1822 (1947), *modifying* 331 U.S. 199, 67 S.Ct. 1178, 91 L.Ed. 1432 (1947), the Supreme Court had affirmed a judgment for overtime pay due plaintiffs under the Fair Labor Standards Act. After their affirmance, but before the time for a motion for rehearing had run, Congress passed the Portal-to-Portal Act to give employers good-faith defenses against back overtime pay actions under the Fair Labor Standards Act. The defendants, on a timely motion for rehearing, asked the Court to reconsider its affirmance in light of the changed law. The Supreme Court remanded to the district court for reconsideration under the new law and judgment was vacated below. The defendants prevailed after a new trial. *Asselta v. 149 Madison Avenue Corp.*, 79 F.Supp. 413, 415–16 (S.D.N.Y.1948) (upholding constitutionality of the application of new law to this case), 90 F.Supp. 422 (S.D.N.Y.1950) (judgment for defendants).

ant in a certain category of tort suits and relegated plaintiffs to an FTCA remedy. Statutory schemes similar to § 2212 have been enacted in the Federal Drivers Act, 28 U.S.C. §§ 2679(b)–(e) (substitution in any tort claim against a federal employee who was operating a motor vehicle within the scope of his employment at the time of an incident giving rise to personal injuries), and in the Swine Flu Act, 42 U.S.C. § 247b(k)-(1) (1976) (repealed 1978) (substitution in any tort claim against a private manufacturer of the swine flu vaccine for injuries arising from the vaccine). These two acts have withstood constitutional challenges, and the rational basis test has been the standard of due process analysis applied by the courts. *See, e.g., DiPippa v. United States,* 687 F.2d 14, 19 (3d Cir.1982) (Swine Flu Act); *Ducharme v. Merrill-National Laboratories,* 574 F.2d at 1310–11 (Swine Flu Act); *Carr v. United States,* 422 F.2d 1007, 1010–12 (4th Cir.1970) (Federal Drivers Act).

Plaintiff claims § 2212 must be specially scrutinized because she has been denied her fundamental right of access to the courts. But this case does not involve someone burdening or blocking plaintiff's right of access to the courts to seek enforcement of the law as in the cases plaintiff cites. *See, e.g., California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *McKay v. Hammock,* 730 F.2d 1367 (10th Cir.1984); *Ryland v. Shapiro,* 708 F.2d 967 (5th Cir.1983); *Harris v. Pate,* 440 F.2d 315 (7th Cir.1971). This is a matter of Congress altering her prior rights and remedies. There is no fundamental right to particular state-law tort claims.

Because Congress has acted within its powers under the war powers and commerce clauses of the Constitution and there is no fundamental right or suspect classification involved here, we find that the rational basis standard of due process review applies.

### C. Rational Basis Review

In applying the rational basis test to this case we follow the guidance of the Supreme Court in *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 728–34, 104 S.Ct. 2709, 2717–20, 81 L.Ed.2d 601 (1984); *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. at 82–94, 98 S.Ct. at 2635–41; and *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. at 15–20, 96 S.Ct. at 2892–94. We find that plaintiff has not met her burden of showing that § 2212 is wholly arbitrary and irrational in purpose and effect, *i.e.,* not reasonably related to a legitimate congressional purpose. *See United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 174–77, 101 S.Ct. 453, 459–60, 66 L.Ed.2d 368 (1980); *Vance v. Bradley,* 440 U.S. 93, 97–98, 99 S.Ct. 939, 942–43, 59 L.Ed.2d (1979).

The reasons asserted by the United States for Congress' enactment of § 2212 are neither arbitrary nor irrational, and can be stated simply. The United States has operated a nuclear weapons testing program for over 40 years. It initiates, designs and authorizes all nuclear tests under the program but has found it necessary to obtain the assistance of various private entities including universities and private companies for many aspects of the testing. From the late 1940's to the early 1960's a series of above-ground tests of atomic weapons were conducted with military personnel, civilian government employees and private employees of government contractors taking part. Plaintiff's deceased husband was an observer at several of the tests. There is no dispute that these tests were designed and supervised by government officials and were individually authorized by the President. A significant number of those present at the above-ground tests have instituted suits against the government contractors involved in them for injuries caused by radiation exposure. The contractors are generally not threatened with financial liability by these suits since most of their contracts with the government included a clause making the United States indemnitor for all tort liabili-

ty, including costs of litigation, arising from their participation in the testing programs. S.Rep. No. 500, 98th Cong., 2d Sess. 374–76 (1984). Congress has nevertheless perceived these lawsuits to constitute a threat to the continued participation of the private contractors in the nuclear weapons program because the contractors fear the bad publicity generated by the suits. The contractors testified before Congress that the lawsuits have led the public to blame them for the formulation, implementation and execution of the atomic weapons testing policy of the United States. H.R.Rep. No. 124, Part 4, 98th Cong., 1st Sess. 2–3 (1983). They also testified that the lawsuits result in a diversion of human and financial resources away from research and testing activities and into litigation and, therefore, seriously disrupt their participation in the program. *See Litigation Relating to Atomic Testing, 1983: Hearings on H.R. 2797 before the Subcommittee on Administrative Law and Governmental Relations of the House Committee on the Judiciary,* 98th Cong., 1st Sess. 46–49 (1983). Plaintiff asserts that the mere public embarrassment of the private contractors is not a rational or legitimate reason for relieving them of liability. We disagree. Even if we question the extent and effect of this public embarrassment it is not for us to reevaluate it. It is a plausible reason for Congress' action. *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. at 179, 101 S.Ct. at 461.

Nor has Congress chosen a wholly arbitrary or irrational means to its legitimate end. Plaintiff claims that Congress created only an illusory substitute remedy in § 2212, that she probably will not be compensated for her husband's death because under the terms of § 2212(a)(2) the "limitations and exceptions" applicable to the remedies provided by § 2212 are preserved. For purposes of this opinion we will assume, without deciding, that these "limitations and exceptions" include the "discretionary function" exception, 28 U.S.C. § 2680(a), the *Feres* doctrine, *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153,

95 L.Ed. 152 (1950), and the exclusivity provisions of the Federal Employees Compensation Act, 5 U.S.C. § 8816(c), and that they will bar many putative plaintiffs from any relief under the FTCA for radiation injuries. *See DiPippa v. United States,* 687 F.2d at 16–19; *Noga v. United States,* 411 F.2d 943, 945 (9th Cir.), *cert. denied,* 396 U.S. 841, 90 S.Ct. 104, 24 L.Ed.2d 92 (1969); *Thol v. United States,* 218 F.2d 12, 13 (9th Cir.1954); *In re Consolidated United States Atmospheric Testing Litigation,* 616 F.Supp. 759, 771–80 (N.D.Cal.1985); *but see Wallace v. United States,* 669 F.2d 947, 950–54 (4th Cir.1982). Nevertheless, although Congress could have relieved the independent contractors of their burden of defending suits for radiation injuries and still provided those injured by radiation a more generous substitute compensation scheme, we cannot say that Congress' choice of means was without any rational basis. The atomic weapons testing program has been an important, some say vital, government function from its inception. Independent contractors were used only to aid the government to carry out its program. When the program began Congress could have mandated that all tort claims arising from it be litigated through the FTCA. Under the statute as originally enacted, plaintiffs had the right to sue contractors without restriction, but it was the government who paid the judgment under its indemnitor agreement with the contractor. Plaintiffs had the best of both possible worlds, a right to sue free of any FTCA limitations with the government guaranteeing payment of the judgment. It was neither arbitrary nor irrational for Congress to change the law so as to place putative plaintiffs in the same position as any other party suing the United States in tort. *See Hearings, supra,* at 46–48; S.Rep. No. 500, *supra,* at 377. Moreover, there may be government compensation available to many of those injured by radiation, including the plaintiff here, under veterans benefits legislation, 38 U.S.C. §§ 301–363, §§ 401–423, or the FECA.

## III. REMAINING CONSTITUTIONAL ISSUES

Plaintiff's other constitutional challenges can be dealt with summarily.

■ (1) Fifth Amendment Taking. We have already found that plaintiff had no vested property right in her tort cause of action, so it is very unlikely there could be a "taking" here. But, in any event, we have no jurisdiction to consider a taking claim where the amount in controversy exceeds $10,000. Plaintiff claims several million dollars in compensation. The proper forum for such a claim is the Court of Claims. 28 U.S.C. §§ 1346(a)(2), 1491. *See, Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. at 71 n. 15, 101–02 & n. 4, 98 S.Ct. at 2629 n. 15, 2644–45 & n. 4 (Rehnquist, J., dissenting); *In re Aircrash in Bali, Indonesia, on April 22, 1974,* 684 F.2d 1301, 1312 (9th Cir.1982).

(2) Unexpected Law. There is nothing "unexpected" about a validly enacted congressional statute even if the plaintiff was surprised by its enactment. Plaintiff alleges nothing unfair about the legislative procedure by which § 2212 was enacted.

(3) Equal Protection. Plaintiff claims that radiation victims of government atomic tests are a suspect class and that, therefore, strict scrutiny must be our standard of review under an equal protection analysis. Alternatively, she claims we must apply at least an intermediate test to this classification. We disagree. These radiation victims were injured because of the work they did. They do not fall within any of the suspect classifications based on race, gender, alienage or illegitimacy recognized by the Supreme Court as requiring a standard of review more exacting than the rational basis test. *See* J. Nowak, R. Rotunda & J. Young, *Constitutional Law* 524–25 (1978). We find no violation of equal protection for the same reasons we found no violation of due process.

■ (4) Seventh Amendment. There is no right to a jury trial against the sovereign under the seventh amendment. *Glid-*

*den Co. v. Zdanok,* 370 U.S. 530, 572, 82 S.Ct. 1459, 1484, 8 L.Ed.2d 671 (1962). If the United States can abolish the right to a cause of action altogether it can also abolish the right to a jury trial that is part of it. When the United States abolishes a cause of action and then sets up a separate administrative remedy against itself, as it has here, the seventh amendment does not require that it must also provide a jury trial. This has been the holding of those courts that considered seventh amendment challenges to the Federal Drivers Act and Swine Flu Act. *See Jones v. Wyeth Laboratories, Inc.,* 583 F.2d 1070, 1070–71 (8th Cir.1978); *Ducharme v. Merrill-National Laboratories,* 574 F.2d at 1311; *Sparks v. Wyeth Laboratories, Inc.,* 433 F.Supp. 411, 418 (W.Okl.1977); *Nistendirk v. McGee,* 225 F.Supp. 881, 882 (W.D.Mo.1963).

(5) Ninth Amendment. Plaintiff asserts that certain rights are preserved in the ninth amendment for the people. She has not, however, specified which of those rights has been violated.

(6) Tenth Amendment. Plaintiff relies on *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), to support her argument that Congress invaded rights reserved to the states when it abolished state-law causes of action by the enactment of § 2212. *Usery* was overruled in *Garcia v. San Antonio Metropolitan Transit Authority,* — U.S. —, —, 105 S.Ct. 1005, 1021, 83 L.Ed.2d 1016 (1985). Moreover, *Usery* was a case involving Congress' commerce clause powers. We do not think that the tenth amendment limits Congress' war powers under the facts of this case. *Cf. Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. at 84 n. 27, 98 S.Ct. at 2636 n. 27.

(7) Right of Access. As stated in our consideration of the standard of review applicable in plaintiff's due process challenge, plaintiff's right of access to the courts has not been abridged. Furthermore, since plaintiff has not alleged that she has been denied access to the administrative remedies contemplated under § 2212 she cannot

claim her right to petition for redress of grievances has been eliminated.

■■ (8) *Ex Post Facto* Laws, Bills of Attainder, the Contracts Clause. The prohibition against *ex post facto* laws only applies to criminal or penal statutes. *Galvan v. Press*, 347 U.S. 522, 531 & n. 4, 74 S.Ct. 737, 742 & n. 4, 98 L.Ed. 911 (1954). Section 2212 is not punitive so it does not constitute a bill of attainder. *See Selective Service System v. Minnesota Public Interest Research Group*, 468 U.S. 841, ——, 104 S.Ct. 3348, 3351–56, 82 L.Ed.2d 632 (1984). We decline plaintiff's invitation to apply the contracts clause to the federal government.

*Affirmed.*