**Gail HARGREAVES, Individually, and in her capacity as the Administratrix of the Estate of John F. Hargreaves, Plaintiff,**

**v.**

**Steven REIS, Robert Tefft, John Monteiro, William Figura, Raymond Johnson, Lieutenant Brule, Alias, Captain J. Buchanan, Alias, Lieutenant T. William, Alias, Lieutenant G. Duquenoy, Alias, Lieutenant R. Ogle, Alias, Lieutenant D.**

Noelte, Alias, Lieutenant J. McIntyre, Alias, Lieutenant B. Burns, Alias, Lieutenant A. Mitsmenn, Alias, Lieutenant D. Byerlee, Alias, Lieutenant Parent, Alias, and Lieutenant Johnson, Alias, Defendants.

C.A. No. 96-563L.

United States District Court, D. Rhode Island.

Sept. 15, 1997.

David J. Oliveira, MacAdams & Wieck, Inc., Providence, RI, for Plaintiff.

Marc DeSisto, Kathleen M. Powers, DeSisto Law Offices, Providence, RI, for Defendants.

*MEMORANDUM AND ORDER*

LAGUEUX, Chief Judge.

In this wrongful death action, plaintiff Gail Hargreaves ("Hargreaves") seeks to recover damages stemming from the death of her husband, John Hargreaves, who died as a result of injuries sustained in the course of his duties as a firefighter for the City of Pawtucket, Rhode Island. The complaint alleges that defendants, several Pawtucket firefighters and police officers, were negli-

gent in carrying out their duties on the fireground where John Hargreaves was injured, and that this negligence was both the proximate and actual cause of his death. In addition, plaintiff seeks a declaration that the so-called Injured on Duty Statute ("IOD"), R.I.Gen.Laws §§ 45–19–1 to –19, violates certain federal and state constitutional provisions both on its face and as interpreted by the Rhode Island Supreme Court in *Kaya v. Partington*, 681 A.2d 256 (R.I.1996). In that case, the Court held that the IOD is the exclusive remedy for police officers injured in the line of duty with respect to claims against their employers, fellow officers, superior officers, and officers of the municipal corporation. *Id.* at 260–61.

Hargreaves initially filed this action in Providence County Superior Court, and defendants removed the case to this Court on the basis of the federal constitutional claims raised in the complaint. 28 U.S.C. §§ 1331, 1441. Presently before this Court is defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, that motion is granted as to Hargreaves' federal constitutional challenge to the IOD. Further, because the balance of this case concerns only state law issues, the Court declines to exercise supplemental jurisdiction over Hargreaves' state constitutional claims, and thereby remands those claims for consideration by the state courts.

## I. Background

For the purposes of deciding this motion, the Court must treat plaintiff's factual allegations as true. *See Iacampo v. Hasbro, Inc.*, 929 F.Supp. 562, 568 (D.R.I.1996). The facts as alleged by plaintiff are as follows:

On August 22, 1993, John Hargreaves, a nineteen-year veteran firefighter for the City of Pawtucket, responded to a fire at 100 Cottage Street in Pawtucket.[1] While

tending his pumper truck in accordance with an immediate supervisor's order, another superior officer ordered Firefighter Hargreaves into the building. Later, as conditions worsened, the commanding officer ultimately decided to evacuate the building of all firefighters. However, due to confusion on the fireground, superior officers had been unable to track the whereabouts of all personnel on the scene, and thus Firefighter Hargreaves was left in the building after the evacuation order. By the time he was finally able to find his way out of the building, he had sustained severe injuries which, one month later, proved to be fatal.

In March 1996, Hargreaves filed a wrongful death action in Providence County Superior Court against two superior officers and the City of Pawtucket, seeking to hold those defendants liable for their alleged negligence in the management and supervision of the fireground. However, soon thereafter, the Rhode Island Supreme Court issued its decision in *Kaya v. Partington*, 681 A.2d 256 (R.I.1996), which concerned a Providence police sergeant's negligence claim against the City and a superior officer for injuries sustained in the line of duty. After reviewing the common law antecedents and purposes of the IOD, the Court concluded that this statute was intended to provide the exclusive remedy for claims of this type, and therefore held that the IOD precluded the sergeant's negligence claim. *Id.* at 260–61.

Recognizing that her original suit against the City and the superior firefighting officers was effectively barred under *Kaya*, Hargreaves filed a second action on August 16, 1996, again in state court.[2] As in the first suit, Hargreaves once again alleges that her husband's injuries were caused by the negligence of superior firefighting officers at the fireground. However, unlike the original action, the instant complaint asserts additional claims against the individual police officers

---

1. The Court notes that there is some discrepancy between the facts as alleged in the complaint and as stated in plaintiff's brief. While the complaint cites August 22, 1993 as the date of the fire, the brief fixes the date as September 21, 1993.

2. Plaintiff submits that time constraints prevented her from simply amending the original action to include the additional claims raised here, noting that *Kaya* was decided just before the expiration of the three-year limitations period applicable to this case. From the materials made available to the Court, it appears that the first case is still pending in state court.

on the scene at 100 Cottage Street, maintaining that their negligent provision of fireground support and security was a contributing cause of Firefighter Hargreaves' fatal injuries.

In framing the present complaint, Hargreaves attempts to circumvent the difficulties presented by *Kaya* with two lines of argument. First, Hargreaves submits that her claims against the individual police officers can be distinguished from *Kaya*. To this end, she notes that the specific holding of *Kaya* only addresses a police officer's claims against the municipal employer and fellow and superior *police* officers. Therefore, Hargreaves contends that *Kaya* should not be read to bar cross-departmental claims, i.e., a police officer's negligence claim against a firefighter, or vice versa.

Second, with respect to her claims against the firefighting officers—and to the extent that *Kaya* bars the claims against the police officers as well—Hargreaves seeks a declaration that the IOD, both on its face and as interpreted by *Kaya*, is invalid as violative of certain federal and state constitutional provisions. Specifically, Hargreaves maintains that the exclusive and non-elective nature of the IOD remedy abrogates her right to a jury trial as well as her right to due process and equal protection as guaranteed by the Federal and Rhode Island Constitutions. In addition, plaintiff contends that *Kaya*'s reading of the IOD leaves her without an appropriate remedy at law for the wrong that has been committed, in violation of Article 1, Section 5 of the Rhode Island Constitution. Finally, wholly distinct from the issues raised in light of *Kaya*, Hargreaves maintains that the IOD's provisions for setting and allocating benefits impermissibly delegate legislative authority to a non-elected body, in violation of Article 6, Section 2 of the Rhode Island Constitution.

Defendants removed the action to this Court on the basis of the federal constitutional questions raised in the complaint, and subsequently filed a motion to dismiss all claims in lieu of answer. After hearing the arguments of counsel, the Court took the matter under advisement. It is now in order for decision.

## II. Standard for Decision

In ruling on a motion to dismiss, the Court construes the complaint in the light most favorable to plaintiff, taking all well-pleaded allegations as true and giving plaintiff the benefit of all reasonable inferences. *See Negron–Gaztambide v. Hernandez–Torres*, 35 F.3d 25, 27 (1st Cir.1994), *cert. denied*, 513 U.S. 1149, 115 S.Ct. 1098, 130 L.Ed.2d 1066 (1995). Dismissal under Rule 12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990).

## III. Discussion

Prior to the enactment of the IOD, police officers and firefighters faced severe constraints when seeking to recover in tort for injuries sustained in the line of duty. The doctrine of sovereign immunity effectively barred any recovery against the state or municipal employer, even where the injured officer was able to prove negligence on the part of the employer or superior officers. *See Labbadia v. State*, 513 A.2d 18, 21 (R.I. 1986). Moreover, the firefighters'/police officers' rule circumscribed any tort claim an injured officer might have against the third party whose negligence caused the fire or accident to which the officer responded. *See Aetna Cas. & Sur. Co. v. Vierra*, 619 A.2d 436, 437–39 (R.I.1993) (reviewing origins and scope of firefighters'/police officers' rule). Therefore, under the common law, police officers and firefighters essentially were left without a source of recovery for injuries sustained in the course of performing their duties.

The IOD is a legislative attempt to rectify this situation. R.I.Gen.Laws §§ 45–19–1 to –19, "Relief of Injured or Deceased Fire Fighters and Police Officers," provides a statutory right to compensation for police officers, firefighters, and crash rescue crewpersons who have been injured or killed in the line of duty. When a Rhode Island

firefighter or police officer is injured in the line of duty, the state or municipal employer must continue to pay the officer his or her full salary and benefits during the period of incapacity, and must also pay all medical and related expenses stemming from the injury. R.I.Gen.Laws § 45–19–1(a). Additionally, where the line-of-duty injury permanently disables a firefighter from returning to his or her duties, the IOD offers re-training benefits in the form of tuition grants to state colleges and universities. R.I.Gen.Laws § 45–19–12.3(a). The IOD further requires the employer to cover all medical expenses for an officer who has been placed on a disability pension as a result of a line-of-duty injury, and then suffers a recurrence of the injury that necessitated such retirement. R.I.Gen.Laws § 45–19–1(a). Finally, in the event that a police officer or firefighter suffers line-of-duty injuries that prove to be fatal, the IOD provides annuities for the officer's surviving spouse and dependents, R.I.Gen.Laws § 45–19–12(a)(1)–(2), as well as tuition grants to the fallen officer's children, R.I.Gen.Laws § 45–19–12.1(a).[3]

In order to recover the benefits made available under the IOD, the injured firefighter or police officer is not required to show any fault on the part of the state or municipal employer. Instead, IOD benefits are triggered automatically upon the occurrence of a line-of-duty injury. *See Labbadia,* 513 A.2d at 21. Indeed, the IOD benefits scheme is mandatory upon both the employees and the state or municipal employers, as there is no "opt-out" provision that would allow municipalities to establish separate compensatory schemes for injuries sustained in the line of duty. *See Kaya,* 681 A.2d at 259; *cf.* R.I.Gen.Laws § 28–29–17 (opt-out provision of Worker's Compensation Act).

Not only is the IOD a non-elective remedy, but it is also the exclusive remedy for a police officer or firefighter injured in the line of duty as against his or her employer and other members of the respective police or fire department. While the text of the stat-

ute is silent as to exclusivity, the Rhode Island Supreme Court recently held that the Legislature intended IOD benefits to provide an officer's exclusive source of recovery from the public fisc. *See Kaya,* 681 A.2d at 260. In addition, the Court found that the purposes of the IOD, as well as the nature of police and fire department activity, compelled the conclusion that the IOD precludes a police officer's or firefighter's negligence suit against superior and fellow officers for injuries sustained in the line of duty:

> It would be productive of near chaos if we should recognize a right of action for police officers, firefighters, and crash-rescue crewmembers to sue their superior officers and fellow employees. In a paramilitary organization nothing could be more detrimental to good order and discipline than the encouragement of civil actions by police, fire, and emergency personnel against their employers and their superior officers arising out of perceived shortcomings in preparing them for dangerous circumstances that they must encounter on a daily basis. It is for this reason, in our opinion, that IOD legislation was originally adopted as an exclusive substitute for the speculative rights of action they might have had against their employers and the community whose members they serve.

*Id.* at 261 (footnote omitted).

Relying on *Kaya,* defendants submit that the claims advanced against the individual police and fire personnel in this case are precluded by the IOD. In reply, Hargreaves does not contest that her claims against the superior firefighting officers fall clearly within the express holding of *Kaya.* Moreover, although *Kaya* does not explicitly address the situation where the negligence claim reaches across departmental lines, the public policy arguments relied upon in *Kaya* would appear to apply with equal force to bar an injured firefighter's claim against a police officer who was also called to the fireground or accident scene where the firefighter's inju-

---

**3.** Contrary to plaintiff's asservations, tuition grants for children are available not only when a firefighter is deceased, but also in cases where a firefighter is disabled. *See* R.I.Gen.Laws § 45–19–12.1(a). Thus, plaintiff's tangential charge of

"blatant discrimination" in the IOD's treatment of the children of police officers vis-a-vis the children of fire personnel is not only irrelevant, but also patently incorrect.

ries were sustained.[4] Thus, it would appear that *Kaya* forecloses the instant action.

In an attempt to avoid this result, Hargreaves challenges the constitutionality of the IOD under both the United States and Rhode Island Constitutions. On the federal level, plaintiff alleges that the IOD, as interpreted by *Kaya*, violates her right to equal protection and due process as guaranteed by the Fourteenth Amendment, and abridges her Seventh Amendment right to a jury trial. The Court will address these federal constitutional issues first, before turning to the additional state constitutional claims raised in the complaint.

■ The primary thrust of Hargreaves' constitutional challenge to the IOD rests on her equal protection argument.[5] Hargreaves submits that Rhode Island law establishes two schemes for the compensation of similarly situated workers: the IOD benefits scheme, which covers police officers and firefighters, and the state Workers' Compensation Act ("WCA"), R.I.Gen.Laws §§ 28–29–1 to 28–38–26, which applies to persons employed in other occupations (some of whom could be regarded as hazardous). In comparing the two schemes, Hargreaves first contends that the IOD offers benefits that are less favorable than those that would be available under the WCA. Further, plaintiff complains that whereas the WCA allows workers to decline coverage and thereby retain the common law right to sue an employer in tort, the exclusive and non-elective nature of the IOD leaves police and fire personnel with no such choice. Citing

these differences between the IOD and WCA compensation schemes, Hargreaves maintains that Rhode Island's police officers and firefighters have been denied equal protection.

However, the Court is not impressed by plaintiff's equal protection argument. As an initial matter, it is far from clear that IOD benefits are indeed inferior to those available under the WCA. It is no doubt true, as Hargreaves maintains, that the WCA provides certain benefits to an injured worker that are unavailable under the IOD. For example, unlike the IOD, the WCA provides scheduled lump sum payments for disfigurement and loss of use. R.I.Gen.Laws § 28–33–19. Further, in the case of a worker's death, the WCA provides a $5,000 payment for burial expenses, R.I.Gen.Laws § 28–33–16, and also provides mandatory death benefits to a widow or widower that can often exceed those that are available under the IOD.[6] R.I.Gen.Laws § 28–33–12. Moreover, again in contrast to the IOD, section 28–29–17 affords covered persons with the option to either accept WCA coverage and thereby waive other remedies, or to decline such coverage and retain the rights the employee might have against the employer under the common law.

However, plaintiff's comparison is markedly one-sided, as in many cases the IOD will provide an injured police officer or fire fighter with greater benefits. The most obvious such instance, and perhaps the most common, is the case where an officer suffers non-

---

4. For the present purposes, the Court simply assumes, without deciding, that *Kaya* applies to bar the claims against the police officers as well. However, this is ultimately a question of state statutory construction which, whenever possible, should be left to the state courts. In light of this Court's dismissal of plaintiff's federal claims and the ultimate decision to remand this case to state court, this Court will allow the remand court the opportunity to definitively determine whether the IOD precludes Hargreaves' claims against the police officers.

5. While Hargreaves' federal challenge to the IOD also rests on due process and Seventh Amendment grounds, the jugular vein of this case is equal protection. Indeed, both in her brief and in oral arguments to the Court, Hargreaves has relied exclusively on her equal protection claim.

Nonetheless, as will become apparent, this claim effectively subsumes and incorporates her due process and jury trial claims.

6. Under the IOD, a surviving spouse can receive an annuity payment of up to $3,600 per year, with the actual amount to be determined by the Board of Firefighter's Relief. R.I.Gen.Laws § 45–19–12(a). Under the WCA, a surviving spouse is entitled to a mandatory annual death benefit equal to 75% of the deceased spouse's net wages, subject to certain maximum payment. R.I.Gen.Laws § 28–33–12(a). While Hargreaves currently receives the maximum $2,600 payment available under the IOD, she contends, without citation, that the maximum allowable death benefit available to her under the WCA would have been $22,800 per annum.

fatal line-of-duty injuries which keep him or her out of work for a period of time. While both the IOD and WCA provide for full payment of medical bills and related expenses, section 45–19–1(a) of the IOD provides that the injured officer will receive full salary and benefits during the time of incapacity, whereas section 28–33–12 of the WCA only provides a disability payment of 75% of net wages, subject to further limitations.[7] Further, the tuition grants provided to an injured firefighter, or to the children of an injured or deceased firefighter, R.I.Gen.Laws §§ 45–19–12.1, –12.3, are unavailable under the WCA. Finally, although the WCA does afford greater *specified* death benefits, Hargreaves fails to note that the IOD also authorizes the employing municipality to make special appropriation to a surviving spouse and children of a deceased firefighter, as may be necessary, as a supplement to other IOD remedies. R.I.Gen.Laws § 45–19–14. Thus, as the IOD provides benefits that are arguably comparable to those that are available under the WCA, Hargreaves' equal protection challenge rests on a questionable premise.

■ Even if the Court accepts plaintiff's characterization, the State's two-tiered scheme does not violate the equal protection clause. It is bedrock constitutional doctrine that absent the creation of a suspect classification or an infringement upon a fundamental right, courts will give great deference to lawmakers when reviewing economic or social welfare legislation under either equal protection or due process principles. *See City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439–40, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (equal protection); *United States v. Carolene Products Co.,* 304 U.S. 144, 152–54, 58 S.Ct. 778, 783–85, 82 L.Ed.

1234 (1938) (substantive due process). Any such law carries a presumption of validity, and will be upheld so long as the law bears a rational relation to a legitimate governmental objective. *See Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 2331–32, 120 L.Ed.2d 1 (1992).

Because this case concerns neither a suspect classification nor a fundamental right, the IOD statute will be tested under the rational basis standard, a standard that is clearly satisfied in this instance.[8] There is certainly a rational basis for granting benefits to police and fire personnel that are different in kind than, and perhaps even inferior to, the relief that is available under the WCA. Unlike a privately-funded workers' compensation scheme, IOD benefit payments are drawn directly from state and municipal coffers. R.I.Gen.Laws §§ 45–19–3, –7, –13. Given the limited pool of resources, the legislature was required to decide how to best distribute the available funds amongst the various areas where relief might be needed: i.e., coverage of medical bills, temporary disability payments, death benefits, and the like. Upon review of the statute, and from plaintiff's argument, it would appear that this balance was struck to provide greater relief for non-fatal injuries—via coverage of medical expenses, full payment of salary while incapacitated, and tuition grants for re-training—at the expense of death benefits. The Court submits that this balance is a reasonable one, since it concentrates relief on those areas where it can reach the greatest number of police officers and firefighters.[9] Therefore, as there is a rational basis for the benefit scheme adopted in the IOD, the equal protection clause cannot be used to upset the legislative judgment on this ground.

7. The Rhode Island Supreme Court focused on this difference in the *Labbadia* case, noting that the IOD "gives police officers, firefighters, and crash-rescue crewmembers greater rights than they would have under either common law (where, for instance, they would have to show fault on the part of the employer as well as overcome certain defenses) or the WCA (where, even though the employee is relieved from proving fault, the employee receives only the percentage of salary provided [by the statute] )." *Labbadia,* 513 A.2d at 21.

8. For the present purposes, the Court will assume, without deciding, that firefighters and WCA–covered employees in other hazardous occupations are "similarly situated" for the purposes of equal protection analysis.

9. This conclusion rests on the reasonable assumption that police officers and firefighters suffer non-fatal injuries in the line of duty with more frequency than they suffer line-of-duty injuries that prove to be fatal.

The fact that the IOD is funded out of the public fisc also provides a rational basis for the exclusive and non-elective nature of the IOD, in that public employers have a legitimate interest in the certainty that stems from this exclusivity. Since an officer's IOD benefits will be set by the statutory criteria, the municipal employers are able to predict with some degree of confidence the amount of benefits that will accrue in the coming year, and consequently appropriate funds for this purpose. However, the task of prediction obviously becomes much more speculative if the IOD scheme could be supplanted by individual personal injury and wrongful death actions. As such, the establishment of the IOD as a mandatory and exclusive remedy provides a reasonable means for achieving and preserving certainty for the state and municipal employers.[10] Of course, the opt-out provision of the WCA creates a similar uncertainty; However, it is the private employer who must bear this uncertainty under the WCA, not the public sector. As such, equal protection is not offended by the fact that police and fire personnel cannot opt-out of the IOD system even though the WCA affords covered workers such an option, because this distinction is supported by a rational basis.

■ In an attempt to invoke strict scrutiny, Hargreaves contends that the exclusive and non-elective nature of the IOD infringes upon a fundamental right, her Seventh Amendment right to a trial by jury. Hargreaves notes that subject to the requirements of diversity jurisdiction, a WCA-covered worker who elects to retain his or her common law rights may bring a tort action against his or her employer in a federal court, and in the process invoke his or her right to a jury trial. However, as the IOD is a mandatory remedy, those covered by the IOD who could meet the requirements for diversity jurisdiction cannot invoke their Seventh Amendment right, since *Kaya* bars them from bringing a cause of action in the first place. It is this deprivation of the right to a jury trial that Hargreaves maintains amounts to a class-based deprivation of a fundamental right, and thus requires the application of strict scrutiny.

■ This argument is unconvincing. It is well settled that the federal constitutional guarantee to a jury trial in certain civil actions does not exist in the abstract, but instead flows as an incident to the claim or cause of action to which this right attaches. *See Mountain Timber Co. v. Washington,* 243 U.S. 219, 235, 37 S.Ct. 260, 263–64, 61 L.Ed. 685 (1917). Thus, where a cause of action is otherwise validly eliminated, there is nothing left to which the Seventh Amendment right can attach. *Id.; see also Hammond v. United States,* 786 F.2d 8, 15 (1st Cir.1986).

These principles work to defeat the jury trial-based equal protection claim advanced by Hargreaves here. While the common law permitted police and fire personnel to file claims against their state or municipal employers for injuries sustained in the line of duty, Rhode Island has supplanted this speculative cause of action with the IOD benefits scheme. As the Court's analysis to this point has shown, the abrogation of the cause of action as to this class does not offend equal protection,[11] and is thus a valid exercise of legislative authority. Accordingly, because there remains nothing to which the right to a jury trial can attach, the Seventh Amendment is likewise not abridged by the exclusive and mandatory nature of the IOD.

---

10. The Court notes that the exclusive nature of IOD benefits is also a reasonable means for achieving the public employers' legitimate interest in avoiding the litigation costs that would stem from individual lawsuits.

11. While the Court's analysis thus far has focused on equal protection, plaintiff's due process claim fares no better. While Hargreaves fails to articulate a specific property right of which she has been deprived, the only such right beyond those already addressed herein would be her right under the common law to file a negligence claim. However, because "[n]o person has a vested interest in any rule of law entitling him to insist that it shall remain unchanged for his benefit," *New York Cent. R.R. v. White,* 243 U.S. 188, 198, 37 S.Ct. 247, 250, 61 L.Ed. 667 (1917), this aspect of the IOD would be tested, and upheld, under the same rational basis analysis discussed in the context of plaintiff's equal protection claim. *See id.* at 206, 37 S.Ct. at 254 Thus, the due process claim requires no further comment.

Having thus concluded that the IOD survives plaintiff's federal constitutional challenge, all that remains for the Court's consideration are Hargreaves' various claims under the Rhode Island Constitution. As far as the Court is aware, the Rhode Island Supreme Court has not to this date measured the IOD against any state constitutional attack, and this Court is wary to prophesize how the Supreme Court might decide the various state law issues raised in Hargreaves' complaint. After weighing the available options, the Court declines to exercise supplemental jurisdiction over the state constitutional claims,[12] as they are best left for the resolution of the state courts. *See Clayton v. Town of West Warwick*, 898 F.Supp. 62, 74 (D.R.I.1995); 13B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure § 3567.1 (Supp.1996). Accordingly, those claims are remanded to the Providence County Superior Court.

## IV. Conclusion

For all of these reasons, the Court concludes that the IOD as interpreted by the Rhode Island Supreme Court, is not offensive to the United States Constitution. Accordingly, defendants' motion to dismiss is granted as to Hargreaves' federal equal protection, due process, and jury trial claims. Hargreaves' remaining state law claims are hereby remanded to the Rhode Island Superior Court.

It is so ordered.

---

**12.** The Court notes that Hargreaves' state constitutional claims are before this Court only through the exercise of supplemental jurisdiction, as diversity was not an available basis for the removal of this action. Even if the requirements for diversity jurisdiction had been met (it is unclear if all defendants are Rhode Island residents), the non-resident plaintiff nonetheless chose to file this action in state court. Thus, because the in-state defendants could not remove on the basis of diversity, 28 U.S.C. § 1441(b), the state law claims are within the Court's supplemental, and not original, jurisdiction.