# United States Court of Appeals
## For the First Circuit

No. 05-2854

DR. JOSÉ S. BELAVAL, INC.,

Plaintiff/Appellant,

RIO GRANDE COMMUNITY HEALTH CENTER, INC.;
CONCILIO DE SALUD INTEGRAL DE LOIZA, INC.,

Plaintiffs,

v.

HON. ROSA PERÉZ-PERDOMO, Secretary,
Department of Health of the Commonwealth of Puerto Rico,

Defendant/Appellee,

COMMONWEALTH OF PUERTO RICO; UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES; MICHAEL O. LEAVITT, Secretary, United States
Department of Health and Human Services,

Defendants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Lynch, Circuit Judge,
Siler,* Senior Circuit Judge,
and Lipez, Circuit Judge.

_____

* Of the Sixth Circuit, sitting by designation.

Robert A. Graham, with whom James L. Feldesman and Feldesman Tucker Leifer Fidell LLP were on brief, for appellant.

Eduardo A. Vera-Ramírez, with whom Courtney R. Carroll, Landrón & Vera LLP, Roberto Sanchez-Ramos, Secretary of Justice, and Salvador Antonetti-Stutts, Solicitor General, were on brief, for appellee.

————————————————

October 2, 2006

————————————————

**LYNCH**, **Circuit Judge**.  This appeal stems from a lawsuit filed on June 6, 2003 by three community health centers in Puerto Rico: Rio Grande Community Health Center, Inc. ("Rio Grande"), Concilio de Salud Integral de Loiza, Inc. ("Loiza"), and Dr. José S. Belaval, Inc. ("Belaval").  Belaval is the sole appellant in this action.

In their suit, the three health centers alleged that the defendant, the Secretary of the Department of Health of Puerto Rico,[1] had failed to make required payments to them under the federal Medicaid statute.  See 42 U.S.C. § 1396a.  They sought declaratory and prospective injunctive relief.  On November 1, 2004, after reviewing and adopting a magistrate judge's Report and Recommendation, the district court issued an order granting plaintiffs a preliminary injunction.  By its terms, the order required the defendant to implement, by November 30, 2004, a "wraparound" payment system that complied with the Medicaid law "for the purpose of providing such payments thereunder to plaintiffs."  In addition to giving the defendant a deadline to put in place a system to make the required payments, the order also provided that "[o]n or before December 10, 2004, defendant shall pay to the appearing plaintiffs which are currently operating all pending supplemental payments for 2004."  The second part of the

_____

[1] At the commencement of this action, the Secretary of Health was Johnny Rullan.  He has since been substituted as a defendant by the current Secretary, Rosa Peréz-Perdomo.

order thus insured that the appearing plaintiffs would not be irreparably harmed in the interim by the defendant's failure to make payments. Belaval was an appearing plaintiff who was operating at the time the order was entered, and as such was within the terms of the November 1, 2004 order.

On March 7, 2005, the district court issued another order, this one clarifying how the defendant was to structure its wraparound payments in light of our decision in Rio Grande Community Health Center, Inc. v. Rullan, 397 F.3d 56 (1st Cir. 2005), a case which affirmed earlier relief that had been granted specifically to Loiza. Payments under the clarified formula were required to begin with the amounts due from the fourth quarter of 2004, and were to continue until Puerto Rico established its compliance with federal law. The order also specifically mentioned Belaval and "reiterate[d]" the court's finding that Puerto Rico's failure to pay Belaval was in violation of the federal Medicaid statute. The court ordered the defendant to "establish forthwith a provisional payment system to alleviate the shortfall."

After this second order, on March 22, 2005 the defendant filed a motion seeking to demonstrate that it was operating in compliance with the order's method of calculation. The plaintiffs opposed this motion and argued there was no compliance. As to Belaval in particular, no payments had yet been made, so it opposed the motion.

The magistrate judge issued a Report and Recommendation on June 24, 2005 in which he found that the defendant was not fully in compliance because Puerto Rico was using an incorrect method of calculating payments. Turning to the payments owed to Belaval specifically, the magistrate judge found that the March 7, 2005 order required only future payments be made to Belaval, and that it did not address past payment obligations. Thus the defendant's failure to pay Belaval up to that point did not mean that it was out of compliance with the March 7, 2005 order. However, the magistrate judge explicitly reserved judgment on whether any payment was owed to Belaval under the November 1, 2004 order, and on whether the defendant was in compliance with *that* order.

In response, Belaval asked the court to find the defendant in contempt of the November 1, 2004 preliminary injunction. On September 26, 2005, the magistrate judge agreed that the November 1, 2004 order had established Belaval's right to payment for the months from March 31, 2004 onward. The defendant's failure to pay Belaval was thus not in compliance with that order. The magistrate judge held the motion for contempt in abeyance, and he gave the defendant Secretary several weeks to come into compliance.

On October 6, 2005, the district court adopted the magistrate judge's June 24 and September 26 Reports and Recommendations finding that the defendant was generally not in

compliance. The district court also agreed that the November 1, 2004 order entitled Belaval to payments from at least the second quarter of 2004 onwards. As did the magistrate judge, the district court held the motion for contempt in abeyance despite the finding of non-compliance. The district court's decision to hold the contempt motion in abeyance is not at issue in this appeal.

What is appealed is a separate portion of that October 6, 2005 order which modified the November 1, 2004 preliminary injunction as to Belaval. Parts of that original injunction had required that Belaval be paid "all pending supplemental payments for 2004" by December 10, 2004, and had also required that the defendant set up a federally compliant payment system, under which Belaval would receive what were then future payments, to be operational by November 30, 2004. The district court modified that original obligation, saying that "in light of the confusion" created by the magistrate judge's June 24, 2005 Report and Recommendation, "wraparound payments to Belaval shall be made prospectively beginning in the third quarter of Fiscal Year 2005."

This modification of the November 1, 2004 preliminary injunction was entirely sua sponte and was not on motion of the defendant, who had sought no such relief. The order modifying the injunction was also entered without prior notice to the parties that the court was considering a modification to the November 1st order and without an opportunity to be heard. The effect of this

unilateral change by the district court was to relieve the defendant from making several quarters' worth of payments that previously had been ordered. Counsel for Belaval represented at oral argument that these payments would have totaled approximately 1.25 to 1.5 million dollars. Belaval appeals from this modification of the earlier preliminary injunction. We reverse this portion of the October 6, 2005 district court order and reinstate the payment obligation to Belaval originally imposed by the November 1, 2004 order.

## I.

The defendant's initial response to the appeal is to argue that this court lacks jurisdiction to hear an appeal from a significant modification of a preliminary injunction. The argument is without merit.

Under 28 U.S.C. § 1292(a), we may hear an interlocutory appeal from a district court order "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court." While § 1292(a) is to be "strictly construed," Sierra Club v. Marsh, 907 F.2d 210, 214 (1st Cir. 1990), the reviewing court must "look to the practical effect of the order rather than its verbiage," Morales Feliciano v. Rullan, 303 F.3d 1, 6 (1st Cir. 2002). The portion of the order appealed from clearly modifies the November 1, 2004 preliminary injunction

as to several quarters' worth of payments -- payments said to be worth over a million dollars. By the terms of the November 1 preliminary injunction, these sums were to have been paid to Belaval almost two years ago and are still unpaid. The district court's modification affects a substantial sum of money and is clearly "jurisdictionally significant," id. at 7; it does much more than merely affect the conduct or progress of litigation.[2]

## II.

The district court cited no authority for its decision to modify the injunction in the manner it did. No party had sought the relief the court ordered, nor had any party presented any arguments as to why the injunction should be modified to substantially diminish the payments that Belaval was entitled to as a result of the November 1, 2004 injunction. Belaval was given no notice or opportunity to object to this modification.

---

[2] At oral argument the defendant belatedly suggested that we lack jurisdiction under § 1292(a)(1) because Belaval had made no showing of irreparable injury. See Morales Feliciano, 303 F.3d at 6. Even if the argument were not waived, it is without merit. Of necessity, the original preliminary injunction rested on a finding that Belaval would suffer irreparable injury if the injunction were not granted and the 2004 payments were not made. Moreover, on September 23, 2005, Belaval filed documents with the district court indicating that it was on the brink of financial ruin due to the defendant's failure to make the statutorily required payments. In any event, in this case the "serious, perhaps irreparable, consequence[s]," Carson v. Am. Brands, Inc., 450 U.S. 79, 84 (1981) (quoting Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 181 (1955)) (internal quotation marks omitted), are apparent from the size of the contested payments and the defendant's delay in making them.

There is an initial question whether the district court had authority to act on its own initiative. This circuit has not decided whether a district court may act sua sponte to modify an injunction under Fed. R. Civ. P. 59(e) or Fed. R. Civ. P. 60(b). The plain text of Rule 59(e) does not speak expressly to that question.[3] And whether Rule 60(b) bars a court from sua sponte issuing relief from judgment is an issue that has divided the circuits. Compare Eaton v. Jamrog, 984 F.2d 760, 762 (6th Cir. 1993) (holding that Rule 60(b) bars sua sponte relief), and Dow v. Baird, 389 F.2d 882, 884-85 (10th Cir. 1968) (same), with Fort Knox Music Inc. v. Baptiste, 257 F.3d 108, 111 (2d Cir. 2001) (finding that Rule 60(b) permits sua sponte relief), Kingvision Pay-Per-View, Ltd. v. Lake Alice Bar, 168 F.3d 347, 351-52 (9th Cir. 1999) (same), McDowell v. Celebrezze, 310 F.2d 43, 44 (5th Cir. 1962) (same), and United States v. Jacobs, 298 F.2d 469, 472 (4th Cir. 1961) (suggesting that sua sponte relief may be appropriate under Rule 60(b) in some cases).

---

[3] One circuit has held that the district court has the inherent authority to act in this manner if it complies with Rule 59(e)'s ten-day limit. See Burnam v. Amoco Container Co., 738 F.2d 1230, 1232 (11th Cir. 1984); see also Sun-Tek Indus., Inc. v. Kennedy Sky Lites, Inc., 848 F.2d 179, 181 (Fed. Cir. 1988) (applying Eleventh Circuit procedural law). But cf. 12 Moore's Federal Practice -- Civil § 59.33 (2006) (stating only that "[a]rguably" the court has this authority). The order in this case, coming some eleven months after the injunction was entered, did not comply with the ten-day limit.

We need not decide these issues here. Even assuming that a court may on its own motion substantially modify the terms of a preliminary injunction to the substantial detriment of a party's property interest, and do so beyond the ten-day limit of Rule 59(e), both the structure of the federal rules and the constitutional guarantee of due process require that a court not do so without giving prior notice to the parties and an opportunity for them to be heard. See Fed. R. Civ. P. 59, 60(b); Logan v. Zimmerman Brush Co., 455 U.S. 422, 428-31 (1982); Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 11-12 (1978); see also Logan, 455 U.S. at 429 ("The Court traditionally has held that the Due Process Clauses protect civil litigants who seek recourse in the courts . . . ."); cf. Kingvision, 168 F.3d at 352 (finding that a federal court judgment constitutes a protected property interest). The district court was required to act in accord with the temporal and substantive standards set by Rules 59 and 60 for modifications.[4] The district court could not deprive Belaval of

---

[4] The defendant, citing Hammond v. United States, 786 F.2d 8 (1st Cir. 1986), argues that a preliminary injunction cannot be a protected property interest because it is not yet a final judgment. This argument misreads Hammond, which stands only for the proposition that when the legislature changes the underlying law during the pendency of litigation, there is no constitutional violation because the litigant's property interest does not "vest" until there has been a final judgment. See id. at 12. In the case at hand, there has been no change in the underlying substantive law, and thus no need to determine the point at which any property right "vested." Defendant's reading of Hammond is also squarely in tension with the Supreme Court's recognition in Logan that a cause of action is a protected property interest. See Logan, 455 U.S. at 428-29.

-10-

this property interest without notice and an opportunity to be heard. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985). Neither of those was given.

Our ruling does not foreclose the district court, on remand and after notice and a hearing (and assuming it has authority), from considering whether the preliminary injunctive relief granted on November 1, 2004 may be modified under the usual criteria for such modifications. For example, under Rule 60(b)(1) the defendant would have to show "mistake, inadvertence, surprise, or excusable neglect," as those terms are used within the rule. Under Rule 60(b)(5) the defendant would have to show that "it is no longer equitable that the judgment should have prospective application," and that there has been the kind of "significant change" in circumstances that the Rule requires. See, e.g., United States v. Kayser-Roth Corp., 272 F.3d 89, 95-96 (1st Cir. 2001). Under Rule 60(b)(6), the defendant would have to show that there are "exceptional circumstances justifying extraordinary relief." Ahmed v. Rosenblatt, 118 F.3d 886, 891 (1st Cir. 1997). For any relief under Rule 60(b), the defendant would have to show that a "motion [was] made within a reasonable time," and in the case of Rule 60(b)(1) that a motion was made "not more than one year after the judgment, order, or proceeding was entered or taken."

We vacate and reverse the appealed-from portion of the October 6, 2005 order insofar as it purports to modify the November

1, 2004 preliminary injunction's payment obligation to Belaval.

Costs are awarded to Belaval.