# United States Court of Appeals
## For the First Circuit

Nos. 17-1686, 17-2217

JOHN KENYON, individually, on behalf of his conjugal partnership
and as parent and natural guardian of C.A.K.; RHEA KENYON,
individually, on behalf of her conjugal partnership and as
parent and natural guardian of C.A.K.; C.A.K.; CONJUGAL
PARTNERSHIP KENYON-KENYON,

Plaintiffs, Appellants,

v.

DR. RICARDO CEDENO-RIVERA; DR. JUAN R. JIMENEZ-BARBOSA; DR.
MARIA DE LOS ANGELES RODRIGUEZ-MALDONADO; SIMED, Insurers
Syndicate for the Joint Underwriting of Medical-Hospital
Professional Liability Insurance; SIMED 1, as insurer for Dr.
Juan R. Jimenez-Barbosa; SIMED 3, as insurance carrier of Dr.
Maria de los Angeles Rodriguez; SIMED 4, as insurance carrier of
Dr. Ricardo Cedeno-Rivera; DR. EVELYN GONZALEZ-DEL RIO; DR.
MARIA COMAS-MATOS; JOE DOES 1-10; INSURANCE COMPANIES A to Z;
JOHN DOE 1; CONJUGAL PARTNERSHIP DOE 1-COMAS; JOHN DOE 2;
CONJUGAL PARTNERSHIP DOE 2-GONZALEZ; CONJUGAL PARTNERSHIP
CEDENO-DOE 2; JOHN DOE 3; CONJUGAL PARTNERSHIP DOE 3-RODRIGUEZ;
SIMED 2, as insurance carrier of Dr. Evelyn Gonzalez-del Rio;
SIMED 5, as insurance carrier of Dr. Maria Comas-Matos; MS.
RICARDO CEDENO RIVERA, wife of Ricardo Cedeno-Rivera,

Defendants, Appellees,

HOSPITAL SAN ANTONIO, INC.,

Defendant, Third-Party Plaintiff, Appellee,

SIMED 7, insurer of Dr. Richard Doe; SERVICIOS MEDICOS DE
ANASCO, INC.; MUNICIPALITY OF ANASCO; DR. RICHARD DOE; MARY ROE,
wife of Dr. Richard Doe; CONJUGAL PARTNERSHIP DOE-DOE, composed
by Dr. Richard Doe and Mary Doe; DR. MARY ROE; RICHARD ROE,
husband of Dr. Mary Roe; CONJUGAL PARTERNSHIP ROE-ROE, composed
by Richard Roe and Dr. Mary Roe; THOMAS ROE; ABC INSURANCE CO.;
DEF INSURANCE CO.; HIJ INSURANCE COMPANY: JKL INSURANCE CO.; RQS
INSURANCE COMPANY; COMPANY MNO; COMPANY OPQ; SIMED 8, insurer of

DR. Mary Roe; DR. FRANCISCO MORALES,

Third-Party Defendants, Appellees,

ADMIRAL INSURANCE COMPANY; JANE DOE 3; CONJUGAL PARTNERSHIP
JIMENEZ-DOE 3,

Defendants.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Silvia L. Carreño-Coll, U.S. Magistrate Judge]

---

Before

Kayatta and Howard,
Circuit Judges.[*]

---

James Healy, with whom Julie Soderlund and Sullivan & Brill, LLP were on brief, for appellants.

Jose H. Vivas, with whom Vivas & Vivas was on brief, for appellee Dr. Ricardo Cedeño-Rivera.

Benjamin Morales Del Valle, with whom Morales Morales Law Offices was on brief, for appellee Dr. María de Los Ángeles Rodríguez-Maldonado.

Jeannette Lopez de Victoria, with whom Oliveras & Ortiz, P.S.C. was on brief, for appellee Dr. Juan R. Jiménez-Barbosa.

Carlos G. Martínez-Vivas, with whom Martinez-Texidor & Martínez-Vivas was on brief, for appellee Hospital San Antonio, Inc.

Nidia I. Teissonniere for appellee SIMED 1, 3 & 4.

---

August 25, 2022

---

[*] Judge Torruella heard argument in these appeals, but he did not participate in the decision. See 28 U.S.C. § 46(d).

**HOWARD**, **Circuit Judge**.  These appeals require us to interpret and apply a Puerto Rico statute that has been amended several times during the pendency of this litigation.  The appeals arise out of a medical malpractice suit filed by the plaintiffs-appellants, John and Rhea Kenyon, on behalf of themselves, their conjugal partnership, and their minor daughter, C.A.K. (collectively, "Kenyon"), against the Hospital San Antonio, Inc. ("HSA") and several doctors who worked in San Antonio Hospital's emergency room.  Kenyon alleged that the named defendants, Drs. Ricardo Cedeño-Rivera, Juan R. Jiménez-Barbosa, and María de Los Ángeles Rodríguez-Maldonado (collectively, "the physicians"),[1] breached their duty of care and departed from accepted medical standards when treating C.A.K. in the emergency room of San Antonio Hospital in 2010.

Following discovery, the physicians moved for summary judgment, arguing that they were absolutely immune from liability for negligence under the 2013 amendments to Article 41.050 of the Puerto Rico Insurance Code.  Law No. 150-2013 (amending P.R. Laws Ann. tit. 26, § 4105) ("Law 150").  The motion was joined by both HSA and the Insurers Syndicate for the Joint Underwriting of Medical-Hospital Professional Liability Insurance ("SIMED"), the

---

[1] The original complaint named several other individuals, including Drs. Maria Comas-Matos and Evelyn Gonzalez-Del Rio, as defendants.  However, these individuals did not join the motion for summary judgment and have not entered an appearance before us.

physicians' professional liability insurance provider. The district court agreed and granted partial summary judgment to the physicians.

After the district court's ruling, another district court in the District of Puerto Rico analyzed the application of Law 150 to HSA and medical professionals working at San Antonio Hospital. Oquendo-Lorenzo v. Hospital San Antonio, Inc., 256 F. Supp. 3d 103 (D.P.R. 2017). Unlike the district court in Kenyon's case, however, the district court in Oquendo-Lorenzo concluded that HSA was not entitled to a cap on damages, and that the doctor in Oquendo-Lorenzo was not entitled to absolute immunity. Kenyon subsequently moved for reconsideration in light of the Oquendo-Lorenzo decision. The district court denied that motion.

Kenyon appealed both decisions and the appeals have been consolidated. We affirm.

## I. Factual Background

The facts underlying the present suit are largely undisputed. In early 2010, C.A.K. began experiencing symptoms of vasculitis, and her parents sought treatment for her condition from her primary care physician. In the early hours of August 14, 2010, C.A.K.'s symptoms became severe, so her mother took her to the emergency room at San Antonio Hospital, where she was evaluated by Dr. Cedeño-Rivera, a licensed physician who worked in the ER. Dr. Cedeño ordered several tests and made a provisional diagnosis

of gastroenteritis and dehydration.  However, his shift ended before the test results were available, and care of C.A.K. transferred to Dr. Rodríguez-Maldonado, another ER doctor.

The tests showed some evidence of acute kidney failure, but Dr. Rodríguez nevertheless discharged C.A.K. at 6:00 P.M. on August 15, 2010.  C.A.K.'s condition continued to deteriorate, and she was taken to various other physicians over the next three weeks.  Finally, on September 8, 2010, C.A.K. was diagnosed with renal failure and was taken to the ER at San Antonio Hospital to be stabilized.  While there, she was diagnosed with acute renal failure and anemia and ordered to be transferred to University Pediatric Hospital in San Juan.  However, C.A.K. was not transferred until 2:15 P.M. the next day.  During this time, both Dr. Rodríguez and Dr. Jiménez-Barbosa were involved in the treatment of C.A.K.

C.A.K. remained at University Pediatric Hospital until November 2, 2010.  By the time she was discharged, she had lost 99% of the function in her kidneys and required daily dialysis. She eventually received a kidney transplant in 2014.

Kenyon initially sued HSA and the physicians in the U.S. District Court for the District of Puerto Rico on September 7, 2011, asserting a claim under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), and also state-law claims.  The suit was dismissed on June 28, 2013, after the district court dismissed

all federal EMTALA claims with prejudice and declined to exercise supplemental jurisdiction over Kenyon's medical malpractice claims, dismissing them without prejudice.

On June 27, 2014, after the family had moved to New Jersey, Kenyon refiled the suit for medical malpractice under the district court's diversity jurisdiction. Following discovery, the physicians, SIMED, and HSA moved for summary judgment. The physicians argued that they were immune from suit due to Article 41.050. HSA also sought summary judgment with respect to the question of whether it was entitled to a limitation on liability for the claims against it.

On March 30, 2017, the district court granted defendants' motions for partial summary judgment. It held that the physicians were immune from suit under the 2013 version of Article 41.050 and, by extension, that SIMED could not be required to compensate Kenyon for damages resulting from that alleged misconduct. See Colon v. Ramirez, 913 F. Supp. 112, 119 (D.P.R. 1996) ("[T]he immunity afforded state doctors is not a personal defense but rather the 'inexistence of a cause of action' and . . . where no cause of action lies against the insured, the insurer is not liable." (citing Lind Rodríguez v. Commonwealth of Puerto Rico, 12 P.R. Offic. Trans. 85 (1928))). The court also held that HSA's liability "for all damages alleged by all parties and by all causes of action[] in the complaint" was capped at $150,000. However, it

- 6 -

found that there was a genuine issue of material fact with respect to HSA's liability, and allowed that portion of the suit to proceed.[2]

After this appeal was filed, Kenyon sought reconsideration in the district court, arguing that Oquendo-Lorenzo represented a change in controlling law. The district court disagreed, and Kenyon appealed the denial of reconsideration as well.

The two appeals were consolidated before us.

## II. The Statutory Scheme

Because this case rests on the proper interpretation of

---

[2] As a result, this appeal is interlocutory since the district court's grant of summary judgment did not fully dispose of the claims against HSA. At our direction, pursuant to Federal Rule of Civil Procedure 54(b), the district court issued a written statement of reasons for authorizing this appeal, specifying that the summary judgment order fully adjudicated all claims against the individual physicians and against SIMED. The district court found that these claims did not overlap with the claims pending against HSA and did not require further fact-finding, so an interlocutory appeal was appropriate. We agree, and proceed to the merits of this appeal.

We note that the district court also appeared to certify its holding that HSA was entitled to a liability cap. But that determination is not final. Spiegel v. Trustees of Tufts Coll., 843 F.2d 38, 43 (1st Cir. 1988) (in reviewing Rule 54(b) certification, "we determine for ourselves whether the judgment has the requisite aspects of finality"); see, e.g., Gen. Acquisition, Inc. v. GenCorp, Inc., 23 F.3d 1022, 1030-31 (6th Cir. 1994) (declining interlocutory appeal of determination as to damages but not liability); Carpenter v. Liberty Ins. Corp., 850 F. App'x 351, 353-54 (6th Cir. 2021). Therefore, the issue of HSA's liability cap is not part of this appeal and we do not address it.

- 7 -

P.R. Laws Ann. tit. 26, § 4105, we start by tracing the evolution of the statute.[3]  Article 41.050 of the Puerto Rico Insurance Code originally passed in 1986 and provided certain medical providers with limits on liability for medical malpractice.  Over the years, the provision has been amended repeatedly.

As of 2010, when C.A.K. was treated at San Antonio Hospital, Article 41.050 had last been amended in 2006.  This version immunized all "health services professional[s]" who worked as "employee[s]" of the Commonwealth of Puerto Rico, "its dependencies and instrumentalities," the Comprehensive Cancer Center of the University of Puerto Rico, "and the municipalities or contractor[s] thereof" from suits for damages "because of culpability or negligence arising from malpractice incurred . . . while acting in compliance of his/her duties and functions."  Law No. 260-2006 (amending P.R. Laws Ann. tit. 26, § 4105).

The statute was amended on June 27, 2011, a few months before Kenyon first filed suit in federal district court, specifically to protect the employees of certain medical providers, namely Mayagüez Medical Center.  See Law 103-2011

---

[3] In doing so, we cite to the translations of the statute that the parties provided to the district court as part of the summary judgment record.  See, e.g., Puerto Ricans for Puerto Rico Party v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008) (explaining that the parties have an obligation to provide certified translations of any Spanish-language documents on which they rely).

(amending P.R. Laws Ann. tit. 26, § 4105) ("Law 103"). The relevant section of this version of the statute did not explicitly mention San Antonio Hospital.

The statute was again amended on September 29, 2012, while Kenyon's initial suit was ongoing. This version of the statute granted immunity to healthcare professionals operating in the "neonatal and pediatric intensive care units, operating, emergency, and trauma rooms of the San Antonio Hospital of Mayagüez." It also noted that for the "internists and pediatricians of the neonatal intensive care units, and the obstetrician gynecologists and surgeons of the San Antonio Hospital," the liability caps in Section 3077 would apply. Law 278-2012 (amending P.R. Laws Ann. tit. 26, § 4105) ("Law 278").[4] The statute made clear that these protections would "start to company [sic] immediately <u>after</u> [the law's] approval." <u>Id.</u> (emphasis added).

On December 10, 2013, a few months after Kenyon's initial suit had been dismissed but before the present suit was filed, Article 41.050 was amended yet again. <u>See</u> Law 150. Law 150 did not significantly change the language granting immunity and limits on liability to medical professionals. However, Law 150 did

---

[4] Section 3077 waives sovereign immunity in certain situations, but also establishes liability caps. P.R. Laws Ann. tit. 32, § 3077 (2011).

- 9 -

include a retroactivity provision, which stated that the Act:

> shall start to govern immediately after its approval, and shall have retroactive effect over any cause of action in any legal proceeding that has been constituted or filed before any competent court or adjudicative forum since June 27, 2011 on forward and that has not been adjudicated or settled, in a final and binding manner, by a court or competent forum, or over any fact occurred on or after June 27, 2011 over which no final and binding judgment has been issued.

This version of the statute was in place when Kenyon filed the present suit against HSA and the physicians. The district court applied this version of Article 41.050 when it granted summary judgment to the physicians and SIMED.

In August of 2017, after the district court had granted summary judgment for the physicians and SIMED, the Puerto Rico legislature again amended Article 41.050. Law No. 99-2017 (amending P.R. Laws Ann. tit. 26, § 4105) ("Law 99"). These amendments specified that HSA would be subject to the "limits of liability" included in "Act No. 104 of June 29, 1955." The 2017 amendments, like the 2013 amendments, included a retroactivity provision explaining that the 2017 version of Article 41.050 would apply to all cases filed after June 2011 that had not yet been "adjudicated or settled in a final and binding manner, . . . or with regard to any fact taking place on or after June 27, 2011, over which a final and binding judgment has not yet been issued."

- 10 -

### III. The Statutory Interpretation Question

The focus of Kenyon's appeal is his contention that the district court improperly read Law 150, by virtue of its retroactivity provision, to immunize the physicians for conduct that occurred before the physicians of San Antonio Hospital were explicitly included in the scope of Article 41.050. The language of Law 150, Kenyon argues, is ambiguous and therefore should be read narrowly to allow the suit to proceed to trial.

#### A. Law 150

Kenyon focuses on Law 150 -- that is, the 2013 amendments to Article 41.050 -- which is the same version of the statute the district court applied. We agree that Law 150 applied to the present case based on the text of its retroactivity provision.[5]

Because the proper interpretation of the statute is a

---

[5] The district court explained that Law 150 applied in the case because of the retroactivity provision in the statute, which specified that it would apply in all cases filed after June 27, 2011, in which there was not yet a final and binding judgment. When Law 150 was passed (and when the district court ruled), Kenyon's case against the physicians and SIMED had not yet been adjudicated in a binding manner. Therefore, the 2013 retroactivity provision applied, and thus, so did the 2013 version of the law.

In August 2017, after the district court granted summary judgment to the relevant defendants, the Puerto Rico legislature again amended Article 41.050. The 2017 version, "Law 99," also contained a retroactivity provision, explaining that the law would apply retroactively to all cases filed since June 27, 2011, that had yet to be adjudicated or settled in a final and binding manner. By the time Law 99 went into effect, however, a binding and conclusive judgment had been issued as to the physicians and SIMED. Thus, we do not apply Law 99 in this case, for the same reasons we explained in Oquendo-Lorenzo. See Oquendo-Lorenzo v. Hospital San

- 11 -

question of law decided by the district court at summary judgment, our review is de novo. Hannon v. City of Newton, 744 F.3d 759, 765 (1st Cir. 2014). In evaluating Kenyon's arguments, we are mindful of our obligation to faithfully apply the substantive law of Puerto Rico and take our cues from the Puerto Rico Supreme Court with respect to the proper method of statutory interpretation. See Quality Cleaning Products R.C., Inc. v. SCA Tissue N. Am., LLC, 794 F.3d 200, 207 (1st Cir. 2015) ("A federal court sitting in diversity cannot be expected to create new doctrines expanding state law." (quoting Gill v. Gulfstream Park Racing Ass'n, 399 F.3d 391, 402 (1st Cir. 2005)).

Here, Kenyon argues that the text of the 2013 amendments to Article 41.050 are ambiguous with respect to the scope of their retroactivity. The amendments, Kenyon suggests, can be read to apply only to those hospitals and organizations that were protected by Article 41.050 before the 2011 amendments were passed. Alternatively, per Kenyon, they can be read to apply only to conduct that occurred after June 27, 2011.

Such readings are contradicted by the text of the retroactivity clause. The retroactivity clause in the 2013 amendments explains that they will apply to: "any cause of action in any legal proceeding that has been

Antonio, Inc., Nos. 17-1810 & 18-1936, slip op. at 11-15 (1st Cir. Aug. 25, 2022).

- 12 -

constituted or filed . . . since June 27, 2011 on forward and that has not been adjudicated or settled, in a final and binding manner . . . ." Law 150 (emphasis added). By its terms, the retroactivity clause does not apply only to conduct that occurred after June 27, 2011; nor does it draw any distinction between institutions that were protected by Article 41.050 before 2011 and after 2011. While the retroactivity clause is unclear as to some points, it is clear on the relevant issues. Kenyon's claims were filed after June 27, 2011, so the clause plainly applies.

Because the text of the statute is clear on that point, our analysis ends there, and we need not look elsewhere. See P.R. Laws Ann. tit. 31, § 14 ("When a law is clear and free from all ambiguity, the letter of the same shall not be disregarded, under the pretext of fulfilling the spirit thereof.").

## B. Immunity

Given that Law 150's retroactivity provision plainly applies to the present case, we are obligated to apply it, as the district court did below. And, under that law, the physicians are immune from Kenyon's malpractice claim. Specifically, when the injury occurred, the physicians were all working as ER doctors. Thus, under Law 150, they may not be "included as defendants in a civil action" for "professional malpractice" or "negligence" because they are "healthcare professional[s]" who were "act[ing] in the compliance with [their] duties and functions" "in

- 13 -

the . . . emergency rooms" of the "San Antonio Hospital of Mayagüez."  P.R. Laws Ann. tit. 26, § 4105.[6]

Consequently, we read the 2013 amendments to Article 41.050 as immunizing the physicians from this suit, and therefore, as foreclosing the present action.

## IV. Constitutional and Puerto Rico Civil Code Issues

Kenyon further contends that retroactive application of Article 41.050 (1) violates § 3 of the Puerto Rico Civil Code, and (2) is unconstitutional as applied to this case under the due process clauses of both the U.S. and Commonwealth of Puerto Rico Constitutions.  As a preliminary matter, we note that Kenyon raised the argument with respect to the federal Constitution only in connection with the 2017 amendments, and not in connection with the 2013 amendments.  However, the 2017 amendments did not

---

[6] Law 150 immunizes a group of healthcare professionals from a malpractice claim if they meet certain listed professional criteria and work at a qualified facility, which includes San Antonio Hospital.  As explained, the physicians fall within that group of professionals.

Law 150 also contains another section that identifies a subgroup of healthcare professionals -- "intensive care professionals and pediatricians of the neonatal intensive care units; and the obstetrician/gynecologists and surgeons of the San Antonio Hospital" -- who are subject to certain liability limits set forth in Section 3077 of Title 32.  However, there is no suggestion in the summary judgment record that any of the physicians involved in this case were surgeons or obstetrician/gynecologists or did any work in the neonatal intensive care unit.  Thus, the part of Law 150 that establishes a liability limit for such healthcare professionals is not relevant to the present case.

- 14 -

meaningfully change the text of the retroactivity clause.  If the 2017 amendments infringe on Kenyon's right to due process, then it follows that the 2013 amendments, which we have applied in this case, would do so as well.

## A. Procedural Barriers to Review

We first consider whether we may reach the merits of Kenyon's due process arguments as to the 2013 amendments.

Federal Rule of Civil Procedure 5.1 requires a "party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute" to "file a notice of constitutional question" with the court and serve that notice to the attorney general of the state.  The physicians and HSA point out that Kenyon never filed a Rule 5.1 notice or served the applicable notice on the Attorney General of Puerto Rico when he filed his opposition to summary judgment contending that the 2013 amendments were invalid under the Commonwealth Constitution.[7]  Kenyon did file and serve such a notice on the Attorney General upon challenging the 2017 amendments under the U.S. and Commonwealth Constitutions, although HSA contends that

---

[7] We note that it is not clear that Kenyon was required to file a notice under Rule 5.1 as to his challenges based on the Commonwealth Constitution. See Gibson v. Am. Cyanamid Co., 760 F.3d 600, 608 n.4 (7th Cir. 2014) ("Because [plaintiff] challenges [a statute] under Wisconsin's Constitution, not the federal constitution, there is no need to certify the challenge to the Wisconsin Attorney General under 28 U.S.C. § 2403(b) or Federal Rule of Appellate Procedure 44(b).").

- 15 -

that notice was untimely.[8]

The issue is thus whether it is appropriate for us to analyze the constitutionality of retroactive application of Article 41.050 under the 2013 amendments, where Rule 5.1 notice was provided as to the 2017 amendments (even if it was untimely, as HSA contends), but not the 2013 amendments. Rule 5.1 makes clear that any alleged "failure to serve the notice . . . does not forfeit a constitutional claim or defense that is otherwise timely asserted." Fed. R. Civ. P. 5.1; see also Puffer's Hardware, Inc. v. Donovan, 742 F.2d 12, 18 (1st Cir. 1984). Where the attorney general has not received a notice that was required under Rule 5.1, "the appellate court has discretion to respond in different ways, depending on the nature of the arguments and the progress of the litigation." Oklahoma ex. rel Edmondson v. Pope, 516 F.3d 1214, 1216 (10th Cir. 2008) (remanding to the district court because Rule 5.1 notice had not been provided, but canvassing other cases that had provided notice to the attorney general of the

---

[8] Kenyon filed that Rule 5.1 notice with the district court on September 7, 2017. In that notice, he explained that he was challenging whether "Law 99 [o]f August 13, 2017[,] violates the Due Process Clauses of the Fourteenth Amendment of the United States Constitution[] and Article II, § 7 of the Puerto Rico Constitution" and noted that "a copy of th[e] notice" was being served on the "Attorney General of Puerto Rico." Rule 5.1(c) provides that the attorney general "may intervene within 60 days after the notice is filed" or within a longer time period under circumstances not relevant here. The Attorney General did not intervene within 60 days.

pending appeal instead). Here, as noted, the issues are the same as to the constitutionality of the retroactivity clause whether considering the 2013 or 2017 amendments, because the 2017 amendments did not meaningfully change the retroactivity clause. Thus, we conclude that there is no need to provide any further notice to the Attorney General.

More concerning for our purposes is HSA's contention that Kenyon waived his argument that the retroactivity clause of Article 41.050 violated the federal Constitution because he failed to properly raise it before the district court. Though Kenyon argued that the 2013 amendments were invalid under the Commonwealth Constitution in his opposition to summary judgment, he did not present the federal constitutional question at the summary judgment stage. Instead, Kenyon first challenged the 2017 amendments under the federal Constitution in his opposition to HSA's motion to take judicial notice of the 2017 amendments, which was filed in response to Kenyon's request for reconsideration. However, the federal constitutional claim was certainly available to Kenyon at the summary judgment stage and should have been presented at that juncture. We therefore agree that Kenyon's federal constitutional arguments are waived, and we need not determine their merits.

Nevertheless, Kenyon preserved his contentions as to the Due Process Clause of the Commonwealth Constitution. And the

Puerto Rico cases that the parties cite suggest that the Puerto Rico Supreme Court determines issues under that clause by reference to federal standards. See Torres v. Castillo, 11 P.R. Offic. Trans. 1001, 1012-13 (1981); Alicea v. Cordova, 17 P.R. Offic. Trans. 811, 831-32 (1986); Defendini Collazo v. E.L.A., Cotto, 134 P.R. Dec. 28 (1993). In addition, Kenyon appears to contend that our due process analysis should be essentially the same under the U.S. and Commonwealth Constitutions, without noting specific differences. Therefore, as part of our analysis of his preserved claim, it is necessary to review caselaw interpreting the federal Due Process Clause. We emphasize, however, that we do so not to determine the merits of his claim under the U.S. Constitution -- which, again, he has waived -- but only because such standards are relevant to his contentions under the equivalent clause of the Commonwealth Constitution.[9]

---

[9] Kenyon also argues that the retroactivity provision is void under Article III § 17 of the Puerto Rico Constitution, which mandates that "[e]very bill, except general appropriations bills, shall be confined to one subject, which shall be clearly expressed in its title, and any part of an act whose subject has not been expressed in the title shall be void." P.R. Const. Art. III, § 17. The retroactivity clause, Kenyon argues, is void because it is not expressly referenced in the title. This argument is refuted by the plain text of the statute: Law 150 was passed "[t]o amend the first and third paragraph of article 41.050 . . . and to establish the application of this Act retroactively." Law 150.

Moreover, the title of the 2013 amendments need not specifically mention retroactive application in order to be valid under Puerto Rico law. See Cervecería Corona v. Minimum Wage Bd. of P.R., 98 P.R. Dec. 801, 1970 P.R. Sup. LEXIS 210 (1970) ("In the case of an amendatory act the prevailing doctrine does not

- 18 -

## B. Commonwealth Due Process Claim

The United States and Commonwealth Constitutions both guarantee, in relevant part, that an individual will not be deprived of liberty or property without due process of law.  P.R. Const. Art. II, § 7; U.S. Const. amend. V, XIV.  The federal Due Process Clause has both "substantive and procedural components." Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006).  Kenyon appears to contend that retroactive application of Article 41.050 violates his right to substantive due process, which the Commonwealth's Due Process Clause also guarantees.  See Defendini Collazo, 134 P.R. Dec. 28.[10]

The federal Constitution's guarantee of substantive due

---

require that the title express the specific changes sought by virtue of the proposed amendment, provided the subject is not remote from or extraneous to that of the original act.").

[10] At times, Kenyon seems to contend that he was also deprived of procedural due process under the Commonwealth Constitution. Procedural due process requires the state to provide "fair procedure[s]" before depriving an individual of protected liberty or property interests.  Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990) (quoting Zinermon v. Burch, 494 U.S. 113, 126 (1990)). However, Kenyon does not specify the procedures he was deprived of nor the procedures that should have been followed.  Therefore, any procedural due process claim is likely waived for lack of development.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Moreover, and in any event, his contentions are based on the same principles whether construed as a claim for procedural or substantive due process -- he contends that he is entitled to such due process because he has a vested property right in his cause of action, and because he has a fundamental right to access the courts.  Therefore, the nature of his claim is not dispositive.

- 19 -

process protects individuals against state action that transgresses "basic and fundamental principle[s]." Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990); see also Pagan, 448 F.3d at 32. Thus, generally speaking, under the federal Due Process Clause, a state action will be reviewed for strict scrutiny only where it interferes with a fundamental right; otherwise, it is reviewed under the more lenient rational basis standard. Medeiros v. Vincent, 431 F.3d 25, 32 (1st Cir. 2005), abrogated on other grounds, Bond v. United States, 564 U.S. 211 (2011). The Supreme Court of Puerto Rico takes a similar approach in reviewing substantive due process claims under the Commonwealth Constitution. For example, that court has stated that something more than the rational basis test will apply if a facially valid law "[is] detrimental to and violate[s] the fundamental rights of the individual." See Torres, 11 P.R. Offic. Trans. at 1012-13. And the court has also made clear that "the Legislature has ample authority to set economic regulations that promote the general welfare," and has reviewed such regulations under the rational basis test. Defendini Collazo, 134 P.R. Dec. 28 (noting that a statute would not violate substantive due process under the Commonwealth's Constitution "provided it has a real and substantial relation to the State interest pursued and is not unreasonable, arbitrary or capricious" (citing Nebbia v. New York, 291 U.S. 502, 525 (1934))).

Here, Kenyon contends that retroactive application of Article 41.050 to immunize the physicians from suit for conduct that took place before the statute was passed, and before June 27, 2011, deprived him of a vested property right in his cause of action and of his fundamental right to access the courts, which violated his right to due process under the Commonwealth Constitution. Nevertheless, he has not pointed to any cases under federal or Puerto Rico law establishing that he was deprived of such a vested or fundamental right.

In the federal context, there is caselaw indicating that retroactive laws that overturn vested property rights are subject to "special scrutiny." See Adams Nursing Home of Williamstown, Inc. v. Matthews, 548 F.2d 1077, 1080 (1st Cir. 1977) (canvassing cases finding retrospective acts invalid because they overturned "vested property rights" and noting that "laws that unsettle settled rights can be harsh, and [] deserve [] special scrutiny" (emphasis added)); Canisius College v. United States, 799 F.2d 18, 25 (2d Cir. 1986) (noting that where such laws overturn "vested rights" they are likely to be arbitrary and irrational). But in Hammond v. United States, we upheld a federal statute under the federal Due Process Clause notwithstanding that it retroactively foreclosed an ongoing tort action based on "common-law and state statutory causes of action" in state court because we reasoned that "rights in tort do not vest until there is a final,

- 21 -

unreviewable judgment." 786 F.2d 8, 11-12 (1st Cir. 1986) (emphasis added). We explained that when rights have "'vested' in real property, a contract, or in a fixed sum, they [are] said to stand independent of the statute that create[s] them and [can]not be abridged by [a] subsequent statute," and contrasted the plaintiff's cause of action because it was not part of a final, unreviewable judgment. Id. at 11, 12. Like the plaintiff in Hammond, here, Kenyon did not have a final, unreviewable judgment when the district court retroactively applied Law 150 to Kenyon's suit.

Kenyon also contends that retroactive application of Law 150 deprives him of his fundamental right of access to the courts, and must therefore meet strict scrutiny. But we rejected that contention in Hammond, reasoning that retroactive application of a statute to foreclose an ongoing tort action did not involve "someone burdening or blocking [a] plaintiff's right of access to the courts to seek enforcement of the law." Id. at 13. We further clarified that "[t]here is no fundamental right to particular state-law tort claims." Id.

Thus, under the federal Due Process Clause -- which the Puerto Rico cases cited by the parties suggest is similar to the Commonwealth's Due Process Clause, and which Kenyon contends is "much" the "same" as that clause -- retroactive application of a statute to foreclose an ongoing tort action in the absence of a

final, unreviewable judgment does not implicate a vested property right or a fundamental right.

Although the parties have not identified any Puerto Rico Supreme Court cases analyzing under the Commonwealth's Due Process Clause the specific issue raised by this case, the cases of that court that they cite suggest that Commonwealth and federal standards on these issues are consistent. Specifically, in Defendini, the Puerto Rico Supreme Court found that a law that establishes a ceiling on the Commonwealth's damages in actions for negligence does not violate the Commonwealth's Due Process Clause. 134 P.R. Dec. 28. The retroactive application of that law was not at issue, and the point at which a cause of action "vests" was not discussed. See id. But the court nevertheless reasoned that the right to bring an action for damages was a "proprietary right," and thus, the "only" question was whether "the limits [imposed by the law] [were] clearly arbitrary." Id.

The court also clarified that Puerto Rico had "not recognized a fundamental right to bring a civil action," and expressly rejected a contention, which Kenyon also makes here, that Alicea and Torres hold otherwise. Defendini Collazo, 134 P.R. Dec. 28 (emphasis added) (noting that Alicea's "pronouncements" that "the right to commence a civil action is a fundamental right" that will have to withstand "strict judicial scrutiny" did "not constitute the opinion of the Court" (quoting

- 23 -

Alicea, 17 P.R. Offic. Trans. at 826)); Defendini Collazo, 134 P.R. Dec. 28 ("Torres does not recognize the existence of a fundamental right to file a civil suit."); see also In re San Juan Dupont Plaza Hotel Fire Litig., 687 F. Supp. 716, 733-34 (D.P.R. 1988) ("In Puerto Rico, the right to sue, or rather the right of access to the courts, though a recognized property right, is not a fundamental right.") (internal quotations and citations omitted).[11]

Kenyon analogizes his situation to that of the plaintiffs in Alicea. There, the Puerto Rico Supreme Court held that a strict, two-year statute of limitations for actions for medical malpractice, including those involving latent injuries, was unconstitutional under the Commonwealth's Due Process Clause because the provision at issue could "have the effect of requiring the plaintiffs to comply with the impossible:  to sue before they

_____

[11] Our opinion in Nieves v. University of Puerto Rico is also instructive.  7 F.3d 270 (1st Cir. 1993).  There, we rejected any interpretation of Alicea as establishing a fundamental right to commence a civil action.  Nieves, 7 F.3d at 277.

Nieves's claim was that "strict scrutiny" was required because of the deprivation of a "fundamental right," "without regard to whether the challenged statutory classification targets a suspect class."  Id.  Although Nieves's claim -- that "the right to recover full compensatory damages," was fundamental -- was more similar to the claim asserted in Defendini than the asserted right here, we broadly rejected the notion that there was a fundamental right to maintain a civil suit for full compensatory damages under the Commonwealth Constitution.  Nieves, 7 F.3d at 273-74, 277 (emphasis in original) (internal quotations omitted).

know about their cause of action." Alicea, 17 P.R. Offic. Trans. at 833.[12] The statute of limitations in Alicea did not simply dictate the timeline by which a plaintiff may sue but "operate[d] immediately to eliminate the existing remedy or within a term so short that the aggrieved party ha[d] no reasonable opportunity to exercise the action." Id. at 832. Here, by contrast, Kenyon had a reasonable opportunity to sue before June 27, 2011, because C.A.K.'s treatment took place between August 14, 2010, and November 2, 2010; therefore, Alicea is inapposite to the facts of this case.

Thus, in summary, Kenyon has not pointed to any case under Puerto Rico law establishing that a fundamental right or vested property right is implicated here. Instead, the relevant Puerto Rico and federal law, to which the Puerto Rico Supreme Court has looked for guidance in interpreting the Commonwealth's Due Process Clause, suggest that no such rights are implicated.[13] Accordingly, retroactive application of the law to Kenyon's case is subject only to rational basis review, and will be upheld unless it is "wholly arbitrary and irrational in purpose and effect." Hammond, 786 F.2d at 13; see also Defendini Collazo, 134 P.R. Dec.

---

[12] As noted, several parts of the opinion of the court did not command a majority, but its holding as to that particular issue did. See id. at 835.

[13] We note as well that we rely on the cases provided by the parties. They are responsible for updating the court on any legal developments that transpire after we hear an appeal, and they have not brought any intervening law to our attention.

The statute here is neither arbitrary nor irrational. Both the Puerto Rico Supreme Court and the United States Supreme Court have acknowledged that a state has a rational interest in protecting the public coffers and ensuring that hospitals are able to continue serving vulnerable populations. See, e.g., Defendini Collazo, 134 P.R. Dec. 28 (concluding that there is a legitimate interest in protecting the Commonwealth's coffers). Kenyon has not shown that the retroactive grant of immunity is so unrelated to the legislature's goal of protecting the healthcare system and ensuring continued access to medical care as to be arbitrary and irrational. See Law 278, Statement of Purpose (discussing the purpose of the grant of immunity).

Accordingly, for all of those reasons, we conclude that Article 41.050 does not violate the Due Process Clause of the Commonwealth Constitution.

## C. The Puerto Rico Civil Code

Kenyon also urges us to conclude that retroactive application of Article 41.050 conflicts with section 3 of the Puerto Rico Civil Code, which provides that "[l]aws shall not have retroactive effect unless they expressly so decree. In no case shall the retroactive effect of a law operate to the prejudice of rights acquired under previous legislative action." P.R. Laws Ann. tit. 31, § 3. We reject this argument.

In support of this theory, Kenyon cites only one case: Vélez Reboyras v. Srio. de Justicia, 15 P.R. Offic. Trans. 700 (1984). But this case explains that there is in fact no "absolute" "principle" of "non-retroactivity." Id. at 712; see also Domínguez Castro v. E.L.A., 178 P.R. Dec. 1 (2010). Instead, it stresses that the Puerto Rico Supreme Court will look to "'the substantiality of the public interest promoted by the statute and the dimension of the impairment caused by its retroactive application' and that '[t]he greater the social evil sought to be remedied by the statute, the greater the public interest involved, and, therefore, the more justification for its retroactive application.'" Vélez Reboyras, 15 P.R. Offic. Trans. at 712 (quoting Warner Lambert Co. v. Tribunal Superior, 101 P.R. Dec. 378 (1973)).

Kenyon, in turn, argues that "[n]o public interest . . . could . . . be earnestly advocated, with respect to granting this benefit retroactively." But as we discussed above, there is a rational interest in protecting the public coffers, which in turn enables the continued operation of hospitals. See Defendini Collazo, 134 P.R. Dec. 28.

Vélez Reboyras does suggest that there is a backstop to flexible application of the non-retroactivity principle: retroactivity cannot extinguish acquired (i.e., vested) rights. 15 P.R. Offic. Trans. at 712; Torres v. Winship, 1940 P.R. Sup.

LEXIS 415 (1940).

But Kenyon gives us no argument at all as to why his cause of action would be considered acquired or vested for the purposes of section 3 of the Puerto Rico Civil Code. Instead, Puerto Rico caselaw suggests that retroactive application of Article 41.050 would not interfere with an acquired right. As the Puerto Rico Supreme Court has explained, "the theory of acquired rights prohibits the retroactive application of a law when this affects legal relationships existing before the validity of the new law, which were born on the basis of the previous legislation." Pérez López et al. v. CFSE, 194 P.R. Dec. 314, 2015 TSPR 165 (2015) (emphasis added). Acquired rights obtain when "the affected parties rested on the rule of law," and the "rights . . . entered the patrimony of the subjects involved." Consejo Titulares v. Williams Hosp., 168 P.R. Dec. 101, 108-09, 2006 TSPR 94 (2006). An example of such an acquired right could be a pension that has become due. Torres, 56 P.R. Dec. at 700.

Conversely, mere expectations do not create an acquired right, and an "acquired right cannot be the set of powers that the previous law allowed citizens to exercise." Consejo Titulares, 168 P.R. Dec. at 108-09. Thus, "not every legal situation that arises under a previous law represents a proprietary interest that gives way to the recognition of an acquired right." Pérez López, 194 P.R. Dec. at 324. And "not every proprietary right or interest

- 28 -

is in turn an acquired right" for the purposes of analyzing compliance with section 3 of the Civil Code. Domínguez Castro, 178 P.R. Dec. at 68.

This caselaw, as well as the law discussed in previous sections, suggests that retroactive application of Article 41.050 does not infringe on any acquired or vested right. Kenyon's cause of action in tort was not a legal relationship "born on the basis of the previous legislation," Pérez López, 194 P.R. Dec. at 324, nor did he "rest[] on" the prior law in any discernable way. Consejo Titulares, 168 P.R. Dec. at 108-09. The previous statutory domain might have created an expectation that he could bring a tort action, but not all expectations create a vested right. See Torres, 56 P.R. Dec. at 700 (pension obligations that are not yet due do not create an acquired right); see, e.g., Hammond, 786 F.2d at 11 (tort cause of action not vested right until there is a final, unreviewable judgment). And again, Kenyon has not pointed us to caselaw suggesting otherwise.

Consequently, the decisions of the Puerto Rico Supreme Court indicate that retroactive application of Article 41.050 would not conflict with section 3 of the Puerto Rico Civil Code. Therefore, Kenyon's argument on this issue fails.

## V. Motion to Reconsider

Finally, while this appeal was pending, Kenyon sought

reconsideration[14] in the district court in light of a district court's decision in Oquendo-Lorenzo, 256 F. Supp. 3d 103. Specifically, Kenyon gestured to the district court in Oquendo-Lorenzo's holding as to HSA's liability and physician liability, arguing this decision represented an "intervening change in the law."

In Oquendo-Lorenzo, the district court addressed a surgeon specializing in obstetrics-gynecology (Dr. Quiles), who had admitting privileges at San Antonio Hospital. Oquendo-Lorenzo, 256 F. Supp. 3d at 117. The district court explained that applying Article 41.050 to Dr. Quiles was difficult, as he was both a "health professional . . . [who performed] his profession . . . in the neonatal and pediatric intensive care units" at San Antonio Hospital (and therefore was entitled to immunity from suit per the statute) and a "gynecologist obstetric[] and surgeon[]" of the hospital (and therefore was entitled only to a limit of liability per Section 3077). Id. at 118 (quoting P.R. Laws Ann. tit. 26, § 4105). The district court acknowledged that this created interpretative difficulties, and ultimately concluded that Dr. Quiles was subject to suit within the limits established by Section 3077. Id. at 122. The district court in Oquendo-Lorenzo also ruled that HSA was not entitled to the liability caps

---

[14] The district court construed this as a Rule 60(b) motion. Fed. R. Civ. P. 60. Kenyon does not contest this characterization.

in Section 3077, P.R. Laws Ann. tit. 32, § 3077.  Id. at 117.

Though Kenyon's motion to reconsider was filed after the notice of appeal, the district court had jurisdiction to consider it.  See Puerto Rico v. SS Zoe Colocotroni, 601 F.3d 39, 41 (1st Cir. 1979).  Our review of the district court's denial of reconsideration is for abuse of discretion.  Daniels v. Agin, 736 F.3d 70, 86 (1st Cir. 2013) ("We review the denial of a Rule 60(b) motion for abuse of discretion, which amounts to 'de novo review of strictly legal determinations and deference to the extent that the denial turns on factual or judgmental determinations.'" (quoting Capability Grp., Inc. v. Am. Exp. Travel Related Servs. Co., 658 F.3d 75, 79 (1st Cir. 2011))).  As a general rule, "a motion for reconsideration is . . . normally not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected."  Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006).  We conclude that the district court did not abuse its discretion in denying Kenyon's motion for reconsideration premised on an "intervening change in the law."

The district court correctly concluded that Oquendo-Lorenzo was not an "intervening change in the law."  As the district court noted, and Kenyon acknowledges, the Oquendo-Lorenzo district court decision carried only "persuasive," not precedential, weight.  Thus, there was no intervening change in the law.  Given this was the only argument Kenyon raised to support

his motion for reconsideration, the district court was entitled to reject this motion.

Even putting that to one side, the district court holding in <u>Oquendo-Lorenzo</u> is not on point to the facts in this case. Unlike the physicians here, the physician-defendant in <u>Oquendo-Lorenzo</u> was a surgeon who specialized in obstetrics-gynecology. Consequently, the district court's conclusion that the defendant-physician was not entitled to immunity in <u>Oquendo-Lorenzo</u> was based on a portion of the text of Article 41.050 that is not implicated here. Thus, the district court in <u>Oquendo-Lorenzo</u>'s ruling as to Dr. Quiles did not call into question the district court's decision as to the physicians sued by Kenyon.

Consequently, we will affirm the district court's denial of the motion for reconsideration.

## VI. Conclusion

For the foregoing reasons, we **<u>affirm</u>** the district court's judgment and order denying the motion to reconsider.